Samuel JOHNSON, Petitioner,

v.

Gaston JUMELLE, Project Director, et al., Respondents.

No. 72 Civ. 4793.

United States District Court,
S. D. New York.

June 12, 1973.

William L. Reese, Jr., Bedford Stuyvesant Community Legal Services Corp., Brooklyn, N. Y., for petitioner; Ronald J. D'Angelo, New York City, of counsel.

Samuel Korb, Brooklyn, N. Y., for respondents, Gaston Jumelle, Project Director, Charles Drew Neighborhood Health Center.

Thomas A. Brennan, Jr., New York City, for respondents St. Mary's Hospital and Catholic Medical Center of Brooklyn and Queens.

Whitney North Seymour, Jr., U. S. Atty., New York City, for respondents, Office of Economic Opportunity and Department of Health, Education and Welfare; Taggart D. Adams, Asst. U. S. Atty., of counsel.

## MEMORANDUM

LASKER, District Judge.

Plaintiff, Samuel Johnson, was suspended from his position as Director of Community Organization with the Charles Drew Neighborhood Health Center ("the Center") on March 27, 1972, and his employment was terminated on June 27, 1972. He brought a petition in the Supreme Court of New York County pursuant to Article 78, Civil Practice Law and Rules (McKinney 1963), seeking reinstatement and back pay. Respondents, now defendants, are Gaston Jumelle, the Health Center's Project Director, Catholic Medical Center for Brooklyn and Queens ("Catholic Medical Center"), and one of its divisions, St. Mary's Hospital ("St. Mary's"), the Office of Economic Opportunity ("O.E.O.") and the Department of Health, Education and Welfare ("H.E.W."). The case was removed to this court by O.E.

O. and H.E.W. pursuant to 28 U.S.C. §§ 1441 and 1446.

■ The complaint (petition) alleges that Johnson was discharged from his position without having been accorded fair and adequate procedures as required by the due process clauses of the Fifth and Fourteenth Amendments. Liability of O.E.O. and H.E.W., which fund or have funded Johnson's former employer, the Neighborhood Health Center, is predicated on their failure to establish mandatory procedures to be followed by community action programs, such as the Health Center, when discharging employees.

O.E.O. and H.E.W. move to dismiss on the ground that the complaint does not state a cause of action. Jumelle and the Health Center seek to have the case remanded to the State court, pursuant to 28 U.S.C. § 1447(c), in the event the motion of the federal defendants is granted. They and Catholic Medical Center and St. Mary's request permission to answer or to move with regard to the complaint at some time to be set by the court after decision on the motion to dismiss.

Before turning to the motion to dismiss, it is necessary to set forth the factual background to the relationship between the federal' agencies and the Center.

The Center has received federal assistance since 1967 as a community action program established pursuant to the Economic Opportunity Act of 1964. (See 42 U.S.C. § 2781 et seq.) Until July 1, 1972, responsibility for funding was in the hands of O.E.O.; on that date, it was transferred to H.E.W. The grant is channeled to the Center through the Community Development Agency of the New York City Human Resources Administration, pursuant to 42 U.S.C. § 2809(a)(4). Operation of the project was delegated by the Community Development Agency to Catholic Medical Center, which in turn delegated it to St. Mary's. The project is governed by the Charles Drew Neighborhood Health Council, consisting of thirty-four elected low income neighborhood residents.

Initially, we think it is clear that Johnson was at no time a federal employee. Furthermore, it appears that although the federal agencies have regulatory powers to carry out the purposes of the Act (42 U.S.C. § 2796(b)) and have in fact exercised those powers to some extent (see, for example, CA Memorandum No. 23–A, issued by O.E.O. on August 26, 1966, exhibit G to Complaint), they have no control over the hiring and tenure of individual employees. Federal participation in community action programs is described in Robles v. El Paso Community Action Agency, 456 F.2d 189 (5th Cir. 1972):

"Once federal funds are granted for the purposes of such program, the [recipient] is required to carry out its program in accordance with the terms of the federal funds grant and the general and special conditions that may be laid down as the terms on which federal funds will be made available. These terms and conditions include requirements that funds be spent only for purposes specified in the approved application, requirements for accountability by means of internal fiscal controls, regular financial reports, and independent audits, and assurances against discriminatory employment practices or discriminatory treatment of beneficiaries on grounds of race or color. *Such terms and conditions do not give the Office of Economic Opportunity the right to direct the manner of carrying out the approved program, nor do they give the Office of Economic Opportunity the right to select or discharge [project] employees.*" *Id.* at 190–191 (emphasis added).

The independence of the projects was intended by Congress: the program was to be one "in which projects are carried out, not *for* the community, but rather *by* the community." Statement by Sargent Shriver, then Special Assistant to President Johnson and subsequently Director of O.E.O., to Congress on

March 17, 1964, *Compilation of Materials Relevant to S. 2642*, Senate Select Subcommittee on Poverty, 88th Cong., 2d Sess., p. 54 (emphasis in original).

Bearing these facts in mind, it is apparent that the complaint must be dismissed as to O.E.O. and H.E.W. for two reasons.

First, the complaint alleges a derogation of duty by O.E.O. and H.E.W. in failing to issue specific guidelines as to the procedures to be followed in discharging employees. However, the relief sought is reinstatement and back pay, which, since the agencies do not control hiring and firing, is palpably not within their power to provide.

Second, given the lack of federal involvement in employee selection, beyond setting general guidelines as to type of personnel, and given the deliberate design of Congress to provide as much community autonomy as possible, the relationship between the agencies and the programs is not such that the former are under either a constitutional or a statutory mandate to regulate the latter's discharge procedures to insure their conformity with constitutional standards. In saying this, we are aware that the agencies apparently have the power to do so,[1] and we think that they might be well advised to exercise that power in view of the important interests to be protected and of the fact that such regulation would certainly not contravene the spirit of the Act.

■ We turn to the motion to remand which Jumelle and the Center have conditioned on our dismissing as to the federal defendants. The motion is predicated on 28 U.S.C. § 1447(c), which states: "If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case." On the face of the statute, it is clear that the motion must be denied, since there is no question of lack of jurisdiction to hear the case under 28 U.S.C. § 1343(3). When the case was properly removed to this court, the jurisdiction of the state court ceased and we do not think that even the consent of all the parties (which perhaps we can infer from the lack of opposition to the motion to remand) could empower us to divest this court of jurisdiction and to confer jurisdiction on the state court absent statutory authorization. Lawton v. Blitch, 30 F. 641 (C.C.S.D. Ga.1887).

Accordingly, the motion to dismiss as to O.E.O. and H.E.W. is granted and the motion to remand is denied. The remaining defendants have twenty days to answer or to move with respect to the complaint.

It is so ordered.

---

1. CA Memorandum 23–A, issued by O.E.O. and dated August 26, 1966 (exhibit G to Complaint), does in fact regulate employee grievance procedures in an extremely general fashion. It states:

"Employee grievances shall be given prompt and fair consideration. Grantee and delegate agencies shall make provision for review of personnel actions by the governing body or a committee appointed by the governing body in any case in which there is a claim of unfair treatment or of dismissal without cause." *Id.* at p. 6.