6(a) <u>Avail. for Cont. Int.:</u>     <u>$29,314</u> = 76.8%
Cont. Int.:     38,153

(b)   % Cont. Int. Recovery No Conversion    76.8%

    % Cont. Int. Recovery If Conversion    37.8%

\* See page 1343, *supra.*

\*\*See page 1343, *supra.*

Stevens J. WHITE

v.

**NORTH LOUISIANA LEGAL ASSIST-ANCE CORPORATION, Robert P. McLeod, and Legal Assistance Corporation.**

Civ. A. No. 78–0487.

United States District Court,
W. D. Louisiana,
Monroe Division.

March 20, 1979.

Michael R. Connelly, William G. Davis, Baton Rouge, La., for plaintiff White.

A. Richard Gear, Hudson, Potts & Bernstein, Monroe, La., for NLLAC and McLeod.

Toby Sherwood, Washington, D. C., Payton Lacy, c/o Olinkraft, Inc., West Monroe, La., for Legal Assistance Corp. in Washington, D. C.

## MEMORANDUM RULING

STAGG, District Judge.

In January 1977, plaintiff Stevens J. White applied for the position of Executive Director of the North Louisiana Legal Assistance Corporation (NLLAC). The position was given to a white woman, and

plaintiff filed a timely charge of sex discrimination with the Equal Employment Opportunity Commission (EEOC). In his charge, plaintiff stated, "I believe that I was discriminated against because of my sex. The job was given to a female." This claim of sex discrimination was investigated by the EEOC which found "reasonable cause to believe that Title VII of the Civil Rights Act of 1964 . . . has been violated in the manner alleged."[1] The parties were invited to attempt a joint resolution of the dispute. On March 9, 1978, plaintiff was issued his "right-to-sue" letter and he filed this lawsuit within the ninety-day time limit.

In his complaint, plaintiff alleges that he is a white male and "a practicing attorney experienced in the administration of legal assistance programs . . ." who was the most qualified individual applying for the job of Executive Director. Plaintiff bases his lawsuit upon 42 U.S.C. § 1983 and 42 U.S.C. § 2000e, alleging that he was "arbitrarily denied the job on the basis of his sex and race. . . ." The relief sought is $350,000 in compensatory and punitive damages, plus $50,000 in attorneys' fees. Named as defendants are the NLLAC, a nonprofit corporation formed pursuant to the Legal Services Corporation Act of 1974 (See 42 U.S.C. § 2996, et seq., and 45 C.F.R. § 1600); Bob McLeod, President of the NLLAC and a member of its nine-member Board of Directors;[2] and the Legal Services Corporation (Corporation), a nonprofit corporation created by the Legal Services Corporation Act of 1974 to "provide financial support [and] legal assistance in noncriminal proceedings or matters to persons financially unable to afford legal assistance." 42 U.S.C. § 2996b(a).

On October 26, 1978, this court dismissed plaintiff's prescribed Section 1983 claim. This Title VII action is currently before the court on motion of defendants Bob McLeod and Legal Services Corporation to be dis-

---

1. Determination letter of 10/28/77 from Mr. Glenn P. Clasen, District Director for the EEOC. See Appendix II.

2. Mr. McLeod and the other members of the Board serve without compensation.

missed as party defendants and on the motion of all defendants to dismiss plaintiff's claim of racial discrimination and his request for compensatory and punitive damages.

## MOTION TO DISMISS BOB McLEOD

Defendant Bob McLeod was President of the NLLAC at the time plaintiff applied for the position of Executive Director. As a member of the nine-member Board of Directors, Mr. McLeod, along with the other Board members, participated in the group interviewing of the job applicants. He never conducted a separate interview with plaintiff. Further, he did not possess the power to hire plaintiff or to reject his application. Mr. McLeod simply had the power to cast one of the nine votes on the decision concerning Mr. White's application. (See Affidavit of Bob McLeod attached to defendants' Motion to Dismiss.)

█ Mr. McLeod is an employer within the purview of 42 U.S.C. § 2000e(b),[3] as he did participate in the processing of Mr. White's application and, as President of NLLAC, he is also its agent. Compston v. Borden, Inc., 424 F.Supp. 157 (S.D.Ohio 1976) and Tarvesian v. Carr Division of TRW, Inc., 407 F.Supp. 336 (D.C.Mass.1976). However, McLeod was not named as a respondent in the EEOC charge and was given no notice of the charges against him until this lawsuit was filed. See Affidavit of Bob McLeod, supra. In enacting Title VII, Congress evidenced a desire for cooperation and voluntary compliance as a pre-

ferred manner for eliminating discrimination in the area of employment opportunity.[4] In furtherance of this policy, an aggrieved party is required to proceed through the conciliation process of the EEOC prior to bringing a lawsuit. Alexander v. Gardner-Denver Co., 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974); Beverly v. Lone Star Lead Construction Co., 437 F.2d 1136 (5th Cir. 1971); East v. Romine, Incorporated, 518 F.2d 332 (5th Cir. 1975). The joining of parties who have not had the opportunity to participate in conciliation procedures circumvents this Congressional mandate. Wallace v. International Paper Co., 426 F.Supp. 352 (W.D.La.1977). From his Affidavit, it is clear that Mr. McLeod had no opportunity to participate in any conciliation attempts conducted by the EEOC. Consequently, his joinder in this lawsuit runs counter to the express intent of Congress, and he must be DISMISSED from this action. Mickel v. South Carolina State Employment Service, 377 F.2d 239 (4th Cir. 1967), cert. denied 389 U.S. 877, 88 S.Ct. 177, 19 L.Ed.2d 166 (1967).

Further, although there is an agency relationship between the named party, NLLAC, and the unnamed party, Bob McLeod, the unnamed party is merely the agent with no power to hire, fire, or pay the plaintiff. The entity with the power to alleviate the alleged grievances is the defendant NLLAC, who was a party to the EEOC conciliation attempts. Cf. Jamison v. Olga Coal Co., 335 F.Supp. 454 (S.D.W. Va.1971). The plaintiff will suffer no prejudice by dismissal of this defendant.[5]

---

**3.** 42 U.S.C. § 2000e(b) of Title VII provides:
    The term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person . . . (Emphasis supplied.)

**4.** See 42 U.S.C. § 2000e–5(f)(1).

**5.** This ruling also dismisses plaintiff's claim for compensatory and punitive damages which leaves the equitable remedies provided under Title VII as plaintiff's available relief. The

NLLAC, as the employing corporation, is the party against whom such relief would be awarded. It does not appear from the record that Bob McLeod possesses the authority to grant the relief now available to plaintiff.

Further, if this case involved a corporation as the unnamed party with the agent as a respondent named in the EEOC charge, it might be reasonable to conclude that any EEOC investigation and conciliation attempts would have included the unnamed corporation. In such a case, dismissal of the party defendant who was not named in the EEOC charge would be improper.

## MOTION TO DISMISS LEGAL SERVICES CORPORATION

The Legal Services Corporation was also not named as a respondent in the EEOC charge and, therefore, did not take part in any conciliation attempts. However, there exists a more cogent reason for dismissing this defendant from the lawsuit than the fact that plaintiff failed to follow the Congressional mandate. The relationship between NLLAC and the Corporation is purely a monetary one and no agency relationship exists. The Corporation was formed pursuant to the Legal Services Corporation Act of 1974 (42 U.S.C. § 2996, et seq.) to provide legal services to those who are denied equal access to our system of justice because of an inadequate income. Under the Act, the Corporation is the funding source of local legal services programs such as the NLLAC, but the Corporation does not have the power to supervise the everyday activities of the recipients of its monetary grants. Since the Corporation is relatively new, there is little jurisprudence touching upon the relationship between the Corporation and its grantees. Therefore, the courts must examine cases involving the Office of Economic Opportunity, the federal agency which previously administered the legal services programs.[6]

The Supreme Court in *United States v. Orleans*, 425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976), held that an organization funded by the Office of Economic Opportunity (OEO) did not become an agent or instrumentality of the United States so that the Federal Government could be liable for torts committed by the organization's employees under the Federal Tort Claims Act. The court pointed out that merely receiving funds did not create an agency relationship. The OEO did impose regulations and guidelines on the local recipients; however, the court stated:

> The regulations do not give the OEO power to supervise the daily operation of a community action agency or a neighborhood program.
>
> Nothing could be plainer than the congressional intent that the local entities here in question have complete control over operations of their own programs with the Federal Government supplying financial aid, advice, and oversight only to assure that federal funds not be diverted to unauthorized purposes.

*United States v. Orleans* at 1977 (footnote omitted). Applying the *Orleans* standard to a case involving a Job Corps program funded by the OEO, the Third Circuit has held that the Government exercised no operational day-to-day control over the program or its employees and thus no agency relationship arose. *Gibson v. United States*, 567 F.2d 1237 (3d Cir. 1977), *cert. denied*, 436 U.S. 925, 98 S.Ct. 2819, 56 L.Ed.2d 768 (1978). In 1972, the Fifth Circuit affirmed the dismissal of an action against the OEO in an employment suit involving a community action agency funded by the OEO. The court ruled that although the local organization is required to carry out its programs in accordance with terms of the federal grant, the imposed terms and conditions did not give the OEO the "right to select or discharge" the organization's employees. *Robles v. El Paso Community Action Agency, Project Bravo, Inc.*, 456 F.2d 189, 191 (5th Cir. 1972). Citing *Robles*, a district court in New York dismissed the OEO from a lawsuit stating, "The relief sought is reinstatement and back pay, which, since the agencies [OEO and HEW]

---

**6.** Under the OEO, local boards of directors were given the exclusive authority "to appoint persons to senior staff positions, to determine major personnel, fiscal, and program policies, to approve overall program plans and priorities, and to assure compliance with conditions of and approve proposals for financial assistance." 42 U.S.C. § 2791(e). Similarly, the Legal Services Corporation Act vests in each recipient program independent control over hiring and personnel decisions. *See* H.R. Rep. No. 247, 93rd Cong., 1st Sess. 10 (1973), *reprinted in* 1974 U.S.Code Cong. & Admin.News, pp. 3872, 3881. Thus, although the OEO has been succeeded by the Corporation as the principal funding source, the fundamental relationship with recipient programs has remained constant.

do not control hiring and firing is palpably not within their power to provide." *Johnson v. Jumelle*, 359 F.Supp. 361 (S.D.N.Y. 1973). The conclusion is ineluctable. The local organizations funded by the OEO were not agents of the OEO, nor did the OEO participate in employment decisions.

■ Likewise, under the Legal Services Act, the Corporation is not involved in the employment decisions of its grantees.[7] In employee selection, the local legal services are directed by Congress to:

[S]olicit the recommendations of Local bar organizations in the community before staff attorney positions are filled. . . . It is expected that recipients will fully consider the legal expertise and previous experiences in legal services type work of all applicants and those recommended for staff positions, so that recipients can select the best possible attorneys for their staffs. The Committee expects the corporation to assure that *recipients will exercise their independent judgment* in hiring of personnel so that the highest quality of legal services to the poor will be provided.

H.R. Rep. No. 247, 93rd Cong., 1st Sess. 10 (1973), *reprinted in* 1974 U.S.Code Cong. & Admin.News, pp. 3872, 3881 (emphasis added). The local legal services organizations are autonomous in their employment decisions. They are not agents of the Legal Services Corporation. Accordingly, plaintiff has no claim against the Legal Services Corporation and it is DISMISSED from this lawsuit.

## MOTION TO DISMISS PLAINTIFF'S ALLEGATION OF RACIAL DISCRIMINATION

In his complaint, plaintiff alleges that he was discriminated against on the basis of his race. This allegation appears spurious, as a white was hired to fill the position which plaintiff sought. A black man was awarded the position of Assistant Director, but the record does not indicate whether this position was ever sought by the plaintiff. Further, plaintiff's EEOC charge alleges sex discrimination, both in the checked box and in the paragraph explanation of the wrong alleged. (*See* Appendix I for a copy of plaintiff's EEOC charge.) Consequently, only plaintiff's sex discrimination claim was investigated by the EEOC. A determination was made and conciliation attempted as to the sex discrimination charge only. (*See* Appendix II for a copy of the EEOC determination letter.)

■ The extent to which the scope of the EEOC charge should limit the scope of the subsequent Title VII litigation is a quandry that has plagued federal courts since the enactment of Title VII. For the Fifth Circuit, the lodestar decision has been *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir. 1970). In *Sanchez*, the court stated:

Mindful of the remedial and humanitarian underpinnings of Title VII and of the crucial role played by the private litigant in the statutory scheme, courts construing Title VII have been extremely reluctant to allow procedural technicalities to bar claims brought under the Act.

*Sanchez* at 460–461 (footnote omitted). The court went on to observe that:

[T]he provisions of Title VII were not designed for the sophisticated or the cognoscenti, but to protect equality of opportunity among all employees and prospective employees. This protection must be extended to even the most unlettered and unsophisticated. It cannot be doubted that "a large number of the charges filed with [the] EEOC are filed by ordinary people unschooled in the technicalities of the law."

*Sanchez* at 463, *quoting King v. Georgia Power Co.*, 295 F.Supp. 943, 947 (N.D.Ga. 1968). The *Sanchez* court relied heavily upon the premise that charging parties are

---

7. *See* affidavit of Hulett H. Askew in the record as part of defendant Legal Services Corporation's Motion to Dismiss. Mr. Askew is the Director of the Regional Office of the Legal Services Corporation in Atlanta, and is responsible for the grants made to local legal services programs in Louisiana.

almost invariably lay persons, often uneducated and always unschooled in legal concepts. The EEOC charge should not become a trap for the unwary. However, in the case under consideration this premise does not hold as plaintiff, in his complaint, describes himself as "a practicing attorney". The leniency accorded a layman in drafting the EEOC charge should not be extended to an attorney.[8]

Further, in *Sanchez*, the court viewed the function of the EEOC charge as an impetus for the concomitant EEOC investigation and not as a judicial pleading. Accordingly, the court adopted the test set forth in *King v. Georgia Power Co., supra*, which it articulated as follows:

> [I]t is only logical to limit the permissible scope of the civil action to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.

*Sanchez* at 466. *Accord, Danner v. Phillips Petroleum Company*, 447 F.2d 159 (5th Cir. 1971). Clearly, plaintiff's allegation of racial discrimination was not investigated by the EEOC nor was it subject to the conciliation efforts between the EEOC and the employer NLLAC. Considering the questionable nature of plaintiff's claim, and his failure to allege racial discrimination as a basis for discrimination in the EEOC charge, plaintiff's allegation of racial discrimination must be DISMISSED from the lawsuit. *EEOC v. New York Times Broadcasting Service, Inc.*, 364 F.Supp. 651 (W.D. Tenn.1973).[9]

## MOTION TO DISMISS PLAINTIFF'S CLAIM FOR COMPENSATORY AND PUNITIVE DAMAGES

This is now a pure Title VII action. The cases in which the court has awarded compensatory and punitive damages in a hybrid Title VII–§ 1983 lawsuit are inapposite. *See, e. g., Claiborne v. Illinois Central Railroad*, 583 F.2d 143, 154 (5th Cir. 1978). The relief which Congress has provided under Title VII is equitable in nature. *Johnson v. Georgia Highway Express, Inc.*, 417 F.2d 1122 (5th Cir. 1969). The relief available under Title VII is found at 42 U.S.C. § 2000e–5(g):

> If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or

---

**8.** *See Danner v. Phillips Petroleum Co.*, 447 F.2d 159 (5th Cir. 1971) (In discussing whether the scope of the judicial inquiry should be limited by the EEOC charge, the court stated that after all "Mrs. Danner is not a lawyer." *Danner* at 161) and *EEOC v. Union Bank*, 408 F.2d 867 (9th Cir. 1968) (In *Union Bank*, the charging party was an attorney who did not follow the procedural requirements necessary to preserve her Title VII rights in California. The court displayed no sympathy for such a *faux pas* by a charging attorney.)

**9.** It should be noted that the problem of the extent to which the allegations of the EEOC charge might serve as a limitation on the scope of a subsequent Title VII suit can arise in two contexts. First, the issues sought to be litigated might be different from those set forth in EEOC charge. The Fifth Circuit will allow all issues rooted in the same discrimination specified in the charge to be litigated. *Gamble v. Birmingham Southern Railroad Co.*, 514 F.2d 678 (5th Cir. 1975); *EEOC v. Huttig Sash & Door Co.*, 511 F.2d 453 (5th Cir. 1975) (charge of discrimination in termination will support claim of discrimination in hiring; *Sanchez v. Standard Brands, Inc., supra.* (charge of harassment and discharge will support complaint alleging discrimination in promotion).

Second, the lawsuit might challenge a basis of discrimination not alleged in the charge. This is the situation in the case *sub judice*. The great weight of authority is against allowing the new basis of discrimination to be litigated. *See, e. g., Jiron v. Sperry Rand Corp.*, 423 F.Supp. 155 (D. Utah 1975); *Matyi v. Beer Bottlers, Local 1187*, 392 F.Supp. 60 (E.D.Mo. 1974); and *Belcher v. Bassett Furniture Industries, Inc.*, 376 F.Supp. 593 (W.D.Va.1974).

any other equitable relief as the court deems appropriate.

As noted in *Albermarle Paper Company v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975), these remedial provisions were modeled after the National Labor Relations Act. It has been settled for decades that compensatory and punitive damages are not available under the NLRA. *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938). Compensatory and punitive damages are legal in nature and should not be awarded in a Title VII action. *Harrington v. Vandalia-Butler Board of Education*, 585 F.2d 192 (6th Cir. 1978) (compensatory damages not available under Title VII); *Richerson v. Jones*, 551 F.2d 918 (3d Cir. 1977) (award of punitive damages not proper in a Title VII action); *Van Hoomissen v. Xerox Corp.*, 368 F.Supp. 829 (N.D.Cal.1973) ("After exam-ining the lengthy legislative history of Title VII . . . this court finds that Congress . . . did not intend that courts would punish defendants by imposing upon them large money awards in the form of compensatory or punitive damages." *Van Hoomissen* at 836.) *See also Howard v. Lockheed-Georgia Co.*, 372 F.Supp. 854 (N.D.Ga.1974).[10]

Accordingly, plaintiff's claim for $200,000 in compensatory damages and $150,000 in punitive damages must be DISMISSED.

## CONCLUSION

Plaintiff's Title VII cause of action based upon a claim of sex discrimination against the NLLAC is set for trial on March 27, 1979, at 9:00 O'Clock A.M. in the Bankruptcy Courtroom in Room 308, Monroe Federal Building.

Appendix to follow.

---

10. The Fifth Circuit has not ruled on this question. *See Claiborne v. Illinois Central Railroad*, 583 F.2d 143 (5th Cir. 1978).

APPENDIX I

| CHARGE OF DISCRIMINATION | EEOC CHARGE NO. 06-2 77 1359 | FORM APPROVED OMB NO. 124-R0001 |
|---|---|---|

**INSTRUCTIONS**

If you have a complaint, fill in this form and mail it to the Equal Employment Opportunity Commission's District Office in your area. In most cases, a charge must be filed with the EEOC within a specified time after the discriminatory act took place. IT IS THEREFORE IMPORTANT TO FILE YOUR CHARGE AS SOON AS POSSIBLE. *(Attach extra sheets of paper if necessary.)*

**CAUSE OF DISCRIMINATION**

- [ ] RACE OR COLOR
- [XX] SEX
- [ ] RELIGIOUS CREED
- [ ] NATIONAL ORIGIN

| NAME *(Indicate Mr. or Ms.)* | DATE OF BIRTH |
|---|---|
| Mr. Stevens Joseph White | September 13, 1946 |

| STREET ADDRESS | COUNTY | SOCIAL SECURITY NO. |
|---|---|---|
| 11528 Old Hammond Hwy. #1305 | East Baton Rouge | 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 |

| CITY, STATE, AND ZIP CODE | TELEPHONE NO. *(Include area code)* |
|---|---|
| Baton Rouge, Louisiana 70816 | (504) 272-3715 |

**THE FOLLOWING PERSON ALWAYS KNOWS WHERE TO CONTACT ME**

| NAME *(Indicate Mr. or Ms.)* | TELEPHONE NO. *(Include area code)* |
|---|---|
| Mr. William G. Davis | (504) 923-3137 |

| STREET ADDRESS | CITY, STATE, AND ZIP CODE |
|---|---|
| 4939 Jamestown Drive | Baton Rouge, Louisiana 70808 |

LIST THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT WHO DISCRIMINATED AGAINST YOU *(If more than one, list all)*

| NAME | TELEPHONE NO. *(Include area code)* |
|---|---|
| North Louisiana Legal Assistance Corporation | |

| STREET ADDRESS | CITY, STATE, AND ZIP CODE |
|---|---|
| 501 South Grand St., Room 102 | Monroe, Louisiana 71201 |

OTHERS WHO DISCRIMINATED AGAINST YOU *(If any)*

| CHARGE FILED WITH STATE/LOCAL GOV'T. AGENCY | DATE FILED | AGENCY CHARGE FILED WITH *(Name and address)* |
|---|---|---|
| [ ] YES [XX] NO | | |

| APPROXIMATE NO. OF EMPLOYEES/MEMBERS OF COMPANY OR UNION THIS CHARGE IS FILED AGAINST 25 (estimate) | DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE *(Month, day, and year)* about March 29, 1977 |
|---|---|

Explain what unfair thing was done to you and how other persons were treated differently. Understanding that this statement is for the use of the United States Equal Employment Opportunity Commission, I hereby certify:

That I applied for the position of Director of the North Louisiana Legal Assistance Corporation. The National Legal Aid Washington Memo advertising for the position said that a person with Legal Aid experience was needed. The position was filled by an attorney with less than a year's experience at practicing law, who had no Legal Aid experience. I, on the other hand, have been practicing law for four years and all of those years with Legal Aid. I believe that I was discriminated against because of my sex. The job was given to a female.

| I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(Day, month, and year)* |
|---|---|
| DATE April 20 1977 CHARGING PARTY *(Signature)* Stevens J. White | 22nd day of April, 1977 |
| Subscribed and sworn to before this EEOC representative. | SIGNATURE *(If it is difficult for you to get a Notary Public to sign this, sign your own name and mail to the District Office. The Commission will notarize the charge for you at a later date.)* |
| DATE SIGNATURE AND TITLE | Wm. G. Davis |

NOTARY PUBLIC

EEOC FORM 5 JUN 72    Previous editions of this form may be used.    ☆ U.S. GOVERNMENT PRINTING OFFICE : 1973-728-451/1250 3-1

APPENDIX II

**NEW ORLEANS DISTRICT OFFICE**
**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
HALE BOGGS FEDERAL BUILDING
500 CAMP STREET, SUITE 1007
NEW ORLEANS, LOUISIANA 70130

CERTIFIED MAIL NO. 301952 √ 53 √ 51    Charge No. 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

Stevens J. White
1071 Boreas Drive
Baton Rouge, Louisiana 70816        Charging Party

North Louisiana Legal
   Assistance Corporation
P.O. Box 3325
Monroe, Louisiana 71201             Respondent

#### DETERMINATION

Under the authority vested in me by 29 C.F.R. Section 1601.21(d) of
the Commission's Procedural Regulations (Sept. 23, 1977), I issue
on behalf of the Commission, the following determination as to the
merits of the subject charge.

Respondent is an employer within the meaning of Title VII of the
Civil Rights Act of 1964, as amended by the Equal Employment Oppor-
tunity Act of 1972.  Timeliness and other jurisdictional requirements
have been met.

Charging Party alleges that he was denied employment because of his
sex, male.

Charging Party was contacted by a representative of the Commission
and was asked to specify such evidence he might have, to give names
of witnesses, and to identify other sources of evidence which would
tend to support the charge.  Such leads as the Charging Party gave
were pursued;  all evidence presented by the Charging Party was fully
considered, as was all other evidence obtained.

Respondent states that Charging Party was not denied employment
because of his sex but because it was the opinion of the Board of
Directors that he would be unable to satisfactorily handle the
supervisory and administrative duties of the position.  Respondent
further states a more satisfactory applicant was later found.

Comparison of the apparent qualifications of Charging Party with those of the female hired shows that Charging Party was better qualified for the position of Executive Director. Respondent gave no acceptable explanation for its bypassing Charging Party. This combination of facts requires a conclusion that the sex of Charging Party was a consideration in the selection process.

On September 25, 1977, after all relevant evidence was received from Respondent, Charging Party was contacted and given a summary of the evidence. Although invited to comment upon the evidence and offer any additional information, Charging Party did not do so.

Having examined the entire record, I conclude that there is reasonable cause to believe that Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, has been violated in the manner alleged.

Having determined that there is reasonable cause to believe that the law has been violated, I now invite the parties to join with the Commission in a collective effort toward joint resolution of this matter and to eliminate unlawful employment practices. The parties may indicate their willingness to enter into settlement discussions by completing the enclosed invitation and by returning it to this office in the enclosed self-addressed envelope within ten days of receipt of this letter.

On behalf of the Commission:

10 - 28 - 77
Date

GLENN P. CLASEN
District Director

Enclosures: (2)
    Invitation to Participate in
      Settlement Discussions
    Copy of the Charge