JOAN STEELE, Petitioner-Appellant, v. THE HUMAN RIGHTS COMMIS-SION et al., Respondents-Appellees.

Third District   No. 3—86—0643

Opinion filed September 22, 1987.

Donald J. Parker, Ltd., of Chicago (Donald J. Parker, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Imelda R. Terrazino, Assistant Attorney General, of Chicago, of counsel), for appellee Human Rights Commission.

Patricia C. Cook, of Vedder, Price, Kaufman & Kammholz, of Chicago (Nina Stillman, of counsel), for appellee B.F. Goodrich Company.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

Joan Steele, a former employee of B. F. Goodrich Company, seeks administrative review of an order of the Illinois Human Rights Commission denying her request for pecuniary damages after the Commission had ruled that she had been discriminated against on the basis of sex by application of a policy which required her to change jobs within the Goodrich plant at Henry, Illinois. The Illinois Human Rights Act (Ill. Rev. Stat. 1985, ch. 68, par. 8—111) provides for judicial review

of the decisions of the Human Rights Commission by the appellate court for the district wherein the civil rights violation was committed; hence, review here is brought in this court.

Joan Steele began her employment at the Goodrich chemical plant in 1977, where she first held an entry level position as "bagger." In that job she was required to fill bags with 50 pounds of product, take each filled bag to a press, and place each pressed bag on a skid in 5 rows stacked 10 bags high. On January 22, 1979, Steele was given a position as a "Chemical Operator II," which also required considerable physical work in that she was required to climb down into large blenders and clean out the chemicals which caked on them. She liked the working conditions at this position.

In September of 1979 Steele was informed that she could no longer work as a "Chemical Operator II" because of a new company policy prohibiting women of childbearing age, that is, between the ages of 16 and 50, from working in locations where they would be exposed to vinyl chloride at or above the level of 0.5 parts per million. The purpose of the policy is to protect unborn fetuses from developmental abnormalities, particularly in the earliest stages when the fetus is most vulnerable and when a woman is unlikely to know that she is pregnant. (There is medical evidence that vinyl chloride is a transplacental carcinogen which persists in the body long enough to pass through the placenta and attain a significant level in the fetus, thereby causing cancer subsequent to birth.) At the time, Steele was 48 years old. Although she was still physically capable of bearing children, she protested the job change because she had no intention of having any more children.

Steele was transferred to the position of "Compound Operator III" at the same rate of pay she had earned previously. This job was an entry level position and, like the job of "bagger," involved filling containers with chemical products and also involved putting together heavy cardboard boxes which held 1,400 pounds of product. She testified the job was physically more onerous than her previous one and required her to work alone, without the comraderie and mental challenge of the chemical operator work. Steele worked as a "Compound Operator III" from September 22 until October 25, 1979. After that date, she did not return to work, and for that reason, was terminated by Goodrich a short time later.

In January of 1980 Steele filed a complaint charging that the Goodrich policy discriminated against her on the basis of her sex and that the job transfer amounted to a constructive discharge. The Human Rights Commission hearing officer began hearing the merits of

Steele's claim on March 31, 1982. At the conclusion of the hearing, he ruled in favor of Goodrich on both issues, *i.e.*, (1) that the policy as applied to Steele did not discriminate on the basis of her sex; (2) that her work environment after transfer was not intolerable, that she voluntarily quit, and that she was not constructively discharged.

Upon a review of that decision by the Human Rights Commission, the ruling that she was not constructively discharged was affirmed, while the hearing officer's ruling as to the fetal protection policy's not being discriminatory was reversed. The Commission found that Steele established a *prima facie* case of sex discrimination in that the imposition of Goodrich's fetal vulnerability program adversely operates against females, that Goodrich established a *prima facie* business necessity defense by evidence of the risk of harm from exposure to vinyl chloride and the effectiveness of the policy to avoid such dangers, and that Steele rebutted the *prima facie* showing of business necessity by proof that acceptable and effective alternative policies and practices existed that would have protected women from the potential dangers of vinyl chloride with less differential impact on female employees. The Commission ordered Goodrich "to cease and desist from discriminating against individuals because of their sex in the implementation of [its] 'fetal vulnerability' program."

As to the issue of constructive discharge, the Commission found that Steele voluntarily terminated her employment relationship. As a result of this latter ruling, Steele was denied the remedies she requested (reinstatement to a "Chemical Operator II" or comparable position, a salary at the level she would have been receiving had she remained at that position, back pay from the time of her resignation and reinstatement of seniority rights and other benefits) except that Goodrich was ordered to pay Steele's reasonable attorney fees.

The only issue presented on review is whether the Commission erred in ruling that Steele resigned voluntarily and was not constructively discharged when she was transferred to the "Compound Helper III" position. The fact that the "fetal vulnerability" policy discriminated against Steele on the basis of her sex is *not* at issue since Goodrich did not seek review of that ruling.

According to section 2—102 of the Illinois Human Rights Act (Ill. Rev. Stat. 1985, ch. 68, par. 2—102), it is a civil rights violation for an employer "to act with respect to *** terms, privileges, or conditions of employment on the basis of unlawful discrimination." The phrase "unlawful discrimination" is defined as discrimination against a person because of, *inter alia*, her sex. Ill. Rev. Stat. 1985, ch. 68, par. 1—103(Q).

■■ Since the Illinois courts have not previously considered the concept of constructive discharge in employment discrimination cases, we consider it appropriate to rely upon Federal cases arising under Title VII of the Civil Rights Act of 1964 (42 U.S.C. sec. 2000a *et seq.* (1976)). (*Clark v. Human Rights Com.* (1986), 141 Ill. App. 3d 178, 490 N.E.2d 29; *Department of Corrections v. Clay* (1985), 135 Ill. App. 3d 710, 481 N.E.2d 1080.) Constructive discharge occurs when an employer deliberately makes an employee's working conditions so intolerable that the employee is forced to resign involuntarily, and when that happens, the employer is liable for any illegal conduct as if it had formally discharged the aggrieved employee. (*Bourque v. Powell Electrical Manufacturing Co.* (5th Cir. 1980), 617 F.2d 61.) The court in *Bourque* adopted as the test for finding constructive discharge that used in *Rosado v. Santiago* (1st Cir. 1977), 562 F.2d 114, 119:

> "Before a 'constructive discharge' may be found, entitling the employee to quit working altogether rather than accepting a transfer which he thinks is violative of his constitutional rights, the trier of fact must be satisfied that the new working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign."

The same standard has been adopted in a number of circuits of the Federal court of appeals. (*E.g., Derr v. Gulf Oil Corp.* (10th Cir. 1986), 796 F.2d 340; *Lojek v. Thomas* (9th Cir. 1983), 716 F.2d 675; *Held v. Gulf Oil Co.* (6th Cir. 1982), 684 F.2d 427; *Henson v. City of Dundee* (11th Cir. 1982), 682 F.2d 897; *Clark v. Marsh* (D.C. Cir. 1981), 665 F.2d 1168.) Furthermore, the court for the northern district of Illinois, anticipating that the Seventh Circuit Court of Appeals will follow the weight of authority, has held the "reasonable person" test adopted in *Bourque v. Powell Electrical Manufacturing Co.* (5th Cir. 1980), 617 F.2d 61, applies to employment discrimination cases arising in its jurisdiction. *Bernstein v. Consolidated Foods Corp.* (N.D. Ill. 1984), 622 F. Supp. 1096; *Bailey v. Binyon* (N.D. Ill. 1984), 583 F. Supp. 923.

■■ Steele urges this court to reject the "reasonable person" test and to adopt instead the "comparable position" standard. In *Ford Motor Co. v. Equal Employment Opportunity Com.* (1982), 458 U.S. 219, 73 L. Ed. 2d 721, 102 S. Ct. 3057, the Supreme Court held that an unemployed claimant under the Civil Rights Act is subject to a statutory duty to minimize damages (*i.e.,* back-pay liability), and hence, a claimant forfeits a right to back pay by refusing a job sub-

stantially equivalent to the one originally denied to the claimant. That case involved the employer's initial refusal to hire female applicants for warehouse work and, after a civil rights complaint was filed, subsequent offer of employment to the claimants to toll the accrual of back-pay liability. The primary question before the Supreme Court was whether the employer must also offer retroactive seniority rights in order to toll liability, and the "comparable position" test was included in a discussion of the employee's statutory duty to minimize damages. We distinguish the ruling in *Ford Motor Co.* from those cases, including the case at bar, which involve constructive discharge rather than a discriminatory refusal to hire.

■ Steele also suggests that the "reasonable person" standard is more difficult to apply than a "comparable position" test. We disagree. The "reasonable person" standard has been widely applied in employment discrimination decisions, as the cases cited above indicate. We must decline to abandon our old friend, the reasonable person, particularly in this case, where the concept is already a well-accepted part of employment discrimination case law. We hold that the Commission used the correct legal standard in the case at bar.

■ Steele next contends that, even using the "reasonable person" standard, the evidence demonstrates that a reasonable person would have been compelled to resign under the circumstances here. She points particularly to the onerous physical demands of the compound helper's position, the psychological and physical pain she suffered, and the demotion to an entry level position as establishing that the Commission's finding was contrary to the manifest weight of the evidence. It is clear from the evidence that every job Steele held in the Goodrich plant was physically demanding and that the job to which she was transferred was not beyond her ability to perform. Although she did not enjoy working alone as much as she had liked working with others as a chemical operator, the work was not so different or so difficult as to compel her to resign. We cannot say that this finding was contrary to the manifest weight of the evidence.

■ As her final contention, Steele claims that the Commission erred in considering only her physical capability and in not taking into account other aspects of the new position that were undesirable. This claim is not supported by the evidence. The hearing officer and the Commission explicitly found that Steele preferred her prior job and that she was dissatisfied with her transfer. These findings indicate that consideration was given to the evidence that she told people she hated the work and to her testimony that she felt like she was being "held down" and forced to start over. She said she knew she would

have to wait two years, until she was 50 years old, before she could get back to the work she really liked. This evidence indicates that the new work was unpleasant, but it is not manifestly evident that the job of "Compound Helper III" was so intolerable that a reasonable person would have to quit while her discrimination claim was being litigated. We cannot say that this finding was against the manifest weight of the evidence.

■ In support of its determination, the Commission also points out that there was only one discriminatory act towards Steele, not a continuous pattern of discriminatory treatment. (See *Satterwhite v. Smith* (9th Cir. 1984), 744 F.2d 1380; *Real v. Continental Group, Inc.* (N.D. Cal. 1986), 627 F. Supp. 434.) These cases indicate that a single instance of demotion, without other acts of discrimination, is not constructive discharge where the employee retains the same salary and benefits in spite of any perceived reduction in responsibility. Where a demotion is accompanied by other demeaning conduct on the part of the employer and suggestions that the employee quit or retire, it has been held that a question of fact exists as to whether constructive discharge occurred. (*Bernstein v. Consolidated Foods Corp.* (N.D. Ill. 1984), 622 F. Supp. 1096.) Here there is no evidence of other discriminatory treatment aside from Steele's transfer to different work, pursuant to the company's "fetal vulnerability" policy.

We conclude that the Commission's decision is in accord with the applicable law as contained in the Illinois Human Rights Act and in the Federal cases interpreting comparable Federal statutory provisions.

For the reasons stated, the order and decision of the Human Rights Commission is affirmed.

Affirmed.

WOMBACHER and HEIPLE, JJ., concur.