[No. H003253. Sixth Dist. Dec. 13, 1989.]

CHRIS J. PANOPULOS, Plaintiff and Appellant, v.
WESTINGHOUSE ELECTRIC CORPORATION et al., Defendants
and Respondents.

**COUNSEL**

Allen Ruby, William Siamas and Morgan, Ruby, Teter, Schofield, Franich & Fredkin for Plaintiff and Appellant.

Gilmore F. Diekmann, Jr., Elliot L. Bien, Kevin G. McCurdy and Bronson, Bronson & McKinnon for Defendants and Respondents.

**OPINION**

**FOGEL, J.*** —Plaintiff appeals from a summary judgment in favor of defendants in an action for wrongful constructive discharge.[1] We conclude

---

*Assigned by the Chairperson of the Judicial Council.

[1] The record contains an order which recites that summary judgment for defendants is appropriate and then directs that the complaint be dismissed and that judgment be entered in favor of defendants. The record does not contain a judgment as such. In the interest of judi-

that subsequent California Supreme Court decisions compel dismissal of plaintiff's discharge-related tort claims regardless of whether summary judgment was warranted at the time of the trial court's ruling (*Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654 [254 Cal.Rptr. 211, 765 P.2d 373]; *Newman* v. *Emerson Radio Corp.* (1989) 48 Cal.3d 973 [258 Cal.Rptr. 592, 772 P.2d 1059]) and that plaintiff's claims for intentional infliction of emotional distress and other predischarge damages are barred by workers' compensation exclusivity. (Lab. Code, § 3601, subd. (a).) We also conclude that summary judgment was properly granted as to the contractual aspects of plaintiff's wrongful discharge claim. We therefore affirm the judgment.

FACTS

After taking early retirement from his employment with defendant Westinghouse Electric Corporation (Westinghouse), plaintiff Chris J. Panopulos brought the instant lawsuit against Westinghouse and the individual defendants for wrongful constructive discharge, breach of the implied covenant of good faith and fair dealing, breach of the duty of good faith and fair dealing, and intentional infliction of emotional distress.

In his declaration opposing summary judgment, plaintiff alleged that he worked for Westinghouse for 32 years, beginning in 1951. He was an accountant with a master's degree from Stanford Business School. Before 1978, he never received any written evaluations from his supervisors but was always told his work was acceptable or better, and until 1971 he received merit increases.

In 1974, Mr. Donald Velasco became plaintiff's supervisor. He never told plaintiff that his work was unsatisfactory, but he did inform him that he would have to meet Velasco's "tough standards." According to plaintiff, Velasco frequently kept him overtime and harped on his mistakes while never praising his good qualities. Plaintiff found his treatment by Velasco humiliating and demeaning, as if he were in an "electric chair."

In 1978, another supervisor told plaintiff that he would have to transfer to the archives department, which transfer he had previously refused in 1977. He told plaintiff that the archives position was the only place left for him, which plaintiff understood to mean that he must accept the transfer or be fired. Plaintiff accepted the transfer.

Plaintiff retained his title as an accountant. However, he found the working conditions physically and mentally intolerable. The archives facility was

---

cial economy, we treat the preliminary order as the appealable judgment itself. (See, e.g., *Lieding* v. *Commercial Diving Center* (1983) 143 Cal.App.3d 72, 73-74 [191 Cal.Rptr. 559]; *Estate of Lock* (1981) 122 Cal.App.3d 892, 896-897 [176 Cal.Rptr. 358].)

a warehouse, with no janitorial service, toilet facilities or drinking water. It was filthy. It was used to store large boxes weighing up to 150 pounds each, stacked in bins to a height of 20 to 35 feet, covered with dust. Plaintiff was required to move these boxes, which injured his back. His duties consisted mainly of manual labor, including wearing workmen's clothes because of the filth and having to climb tall ladders. He repeatedly complained and requested a transfer but was refused. He remained in archives until 1983, when, immediately upon becoming eligible, he took early retirement.

Plaintiff then brought a proceeding to recover workers' compensation in which he alleged temporary total disability and permanent partial disability consisting of injury to his psyche and his back due to his transfer and the working conditions he suffered between 1978 and 1983. He described the development of lower back problems on account of heavy lifting and climbing as well as his initial depression at the transfer which gradually worsened over time as his requests for a transfer out of archives were continually rejected. A psychological evaluation filed in the workers' compensation proceeding stated the opinion that plaintiff handled his job quite adequately before his transfer to archives, but that thereafter he experienced cumulative and severe stress with contributing factors being the rigid reporting requirements of his supervisor, Velasco, criticism of his work, a feeling of isolation from other people, time pressure, and a physically unattractive environment with poor ventilation, many years of accumulated dust and no restroom facilities in which environment he was required to lift heavy boxes to high places. In response to these conditions, plaintiff became tense, anxious, frustrated, angry, tired, fatigued and extremely depressed.

The workers' compensation judge awarded plaintiff temporary total disability for the period from September 1981 through February 1983, and permanent partial disability rated at 64.5 percent, based on findings of psychiatric and physical injury. The judge's decision stated that the workplace played an active role in the development of these conditions. The principal stress factor was the transfer to archives. Of his reason for retiring, plaintiff stated in his declaration that it was his feeling that the transfer to archives was a dismissal, and that he would leave Westinghouse as soon as he was financially able. He was finally able to do so when he became eligible for early retirement.

As an exhibit to the complaint, plaintiff offered a document entitled the "Westinghouse Creed." In that document, Westinghouse promised its employees a number of benefits, including fair treatment, wages and benefits commensurate with skill and effort, stability of employment to the greatest practical extent, fair handling of any complaint, maximum opportunities for self-improvement and advancement in the company, and good working

conditions—"a safe, clean, friendly workplace and proper facilities to help the employe[e] do his job effectively."

In its order granting defendant's motion for summary judgment, the trial court stated that because plaintiff remained on the job for five years after the objectionable transfer, he had no cause of action for constructive discharge. The court also ruled that plaintiff's claim for intentional infliction of emotional distress was barred by workers' compensation exclusivity. The order then directed dismissal of plaintiff's complaint.

## DISCUSSION

In *Foley* v. *Interactive Data Corp., supra,* 47 Cal.3d 654, a decision rendered after the trial court's decision here, the Supreme Court held that tort remedies are not available for breach of a promise not to terminate without good cause in an employment contract. That decision is fully retro-active. (*Newman* v. *Emerson Radio Corp., supra,* 48 Cal.3d at p. 976.) Accordingly, plaintiff cannot recover tort damages for his claim of wrongful constructive discharge, since no public policy violations are alleged here and the claim is entirely dependent on showing breach of promise. The only issues remaining for decision are whether summary judgment was warranted on plaintiff's contractual claims and on his cause of action for intentional infliction of emotional distress.

Addressing the easier of these issues first, the trial court properly found that the cause of action for intentional infliction of emotional distress is barred by workers' compensation exclusivity. A claim for intentional infliction of emotional distress is within the exclusive jurisdiction of the workers' compensation appeals board when it is based on conduct "normally occurring in the workplace." (*Cole* v. *Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 151 [233 Cal.Rptr. 308, 729 P.2d 743].) Here plaintiff's psychiatric injury is alleged to be the direct result of such conduct by Westinghouse, including the actions of a difficult and abusive supervisor and the assignment of plaintiff to a workplace with unpleasant and physically difficult conditions. Workers' compensation is the only remedy for injuries arising from failure to provide a safe or adequate workplace. (*Johns-Manville Products Corp.* v. *Superior Court* (1980) 27 Cal.3d 465, 474-475 [165 Cal.Rptr. 858, 612 P.2d 948, 9 A.L.R.4th 758]; *Spratley* v. *Winchell Donut House, Inc.* (1987) 188 Cal.App.3d 1408, 1412 [234 Cal.Rptr. 121].)

It is significant that in his workers' compensation action, plaintiff alleged exactly the same psychological injury which is the basis of his emotional distress claim here. He submitted psychiatric evidence describing the onset of severe depression on account of his demotion and the difficult conditions

following his transfer to archives, which caused him to deteriorate both mentally and physically and produced a condition described as schizophrenia by examining physicians. Moreover, the workers' compensation judge found that there was industrially caused psychological injury and awarded compensation for that harm. Workers' compensation not only was an available remedy here but was successfully used and produced a substantial judgment for plaintiff. The exclusivity provisions of the Labor Code, particularly section 3601, subdivision (a), bar any further relief for the psychological damage suffered. (Accord, *Pichon* v. *Pacific Gas & Electric Co.* (1989) 212 Cal.App.3d 488, 496 [260 Cal.Rptr. 677].)

The contractual claims[2] present a more difficult question. ▊ First, we must decide whether after *Foley* the law recognizes a contractual cause of action for constructive as well as actual discharge. California decisions prior to *Foley* have held that an employee who resigns because of intolerable working conditions has in essence been forced to leave and therefore has the same rights as one who is formally discharged, but these decisions were in the context of lawsuits for tortious wrongful termination. (*Brady* v. *Elixir Industries* (1987) 196 Cal.App.3d 1299, 1305 [242 Cal.Rptr. 324]; *Smith* v. *Brown-Forman Distillers Corp.* (1987) 196 Cal.App.3d 503 [241 Cal.Rptr. 916].) Similarly, federal decisions discussing constructive discharge all appear to involve violations of public policy or statutory law such as age or race discrimination. (E.g., *Satterwhite* v. *Smith* (9th Cir. 1984) 744 F.2d 1380 [race discrimination]; *Watson* v. *Nationwide Ins. Co.* (9th Cir. 1987) 823 F.2d 360 [race discrimination]; *Wagner* v. *Sanders Associates, Inc.* (C.D.Cal. 1986) 638 F.Supp. 742 [age discrimination]; *Real* v. *Continental Group, Inc.* (N.D.Cal. 1986) 627 F.Supp. 434 [age discrimination]; see also *Steele* v. *Illinois Human Rights Com'n* (1987) 160 Ill.App.3d 577 [112 Ill.Dec. 568; 513 N.E.2d 1177] [sex discrimination].)

None of these decisions, however, explicitly limit the doctrine to cases involving illegal discrimination or tortious conduct, and at least one suggests in a footnote that it is available in a contractual action as well. (*Brady* v. *Elixir Industries, supra*, 196 Cal.App.3d at p. 1305, fn. 4.) We discern no analytical basis for precluding contractual claims for wrongful constructive discharge. In order to prevail at trial, plaintiff would have to prove that Westinghouse breached an implied promise not to discharge him without good cause by forcing him to submit to intolerable working conditions which forseeably and proximately caused his resignation.

▊ Second, we must determine whether there is a triable issue of fact as to the existence of an express or implied promise not to discharge plaintiff

---

[2] Plaintiff concedes that his claim for breach of the implied covenant of good faith and fair dealing is based on the same facts as his cause of action for breach of contract.

without good cause. No express promise is pleaded, and the complaint does not precisely delineate the nature or details of the contract on which plaintiff relies. However, possible bases in the record for finding an implied promise not to discharge without good cause are (1) the representations set forth in the "Westinghouse Creed" described earlier, particularly those regarding stability of employment and "a safe, clean, friendly workplace and proper facilities to help the employe[e] do his job effectively" and (2) a combination of circumstances including plaintiff's longevity of employment and his long record of service without unfavorable evaluations and with merit increases. ■ *Foley, supra,* states that the totality of the circumstances in each case determines the nature of any implied contract, and that these circumstances include such matters as assurances of job security, consistent promotions and salary increases, length of employment, and other relevant facts which might form the basis of an employee's reasonable expectation that he would not be discharged without good cause. (*Foley* v. *Interactive Data Corp., supra,* 47 Cal.3d at p. 681; see also *Pugh* v. *See's Candies, Inc.* (1981) 116 Cal.App.3d 311, 327 [171 Cal.Rptr. 917]; *Koehrer* v. *Superior Court* (1986) 181 Cal.App.3d 1155, 1163-1172 [226 Cal.Rptr. 820]; *Gray* v. *Superior Court* (1986) 181 Cal.App.3d 813, 821 [226 Cal.Rptr. 570]; *Khanna* v. *Microdata Corp.* (1985) 170 Cal.App.3d 250, 262 [215 Cal.Rptr. 860].)[3] ■ It appears that these factors are sufficiently present here to meet plaintiff's burden.

■ Third, we must address Westinghouse's argument that plaintiff's entire action (not just his cause of action for intentional infliction of emotional distress) is barred by workers' compensation exclusivity. For the reasons set forth earlier, we agree with Westinghouse that any damages based on plaintiff's injuries while he remained on the job are so barred, as are any damages which have already been compensated by the workers' compensation judge's partial permanent disability award. (*Cole* v. *Fair Oaks Fire Protection Dist., supra,* 43 Cal.3d 148 at p. 151.) However, it does not follow that the entirety of plaintiff's claim for postresignation damages is similarly preempted. Such damages might, to the extent that they are unrelated to a compensable injury or disability, consist of additional salary and fringe benefits plaintiff would have earned until normal retirement and increased pension benefits from normal as opposed to early retirement. The right to seek such damages outside of the workers' compensation system has been recognized explicitly. (*Pichon* v. *Pacific Gas & Electric Co., supra,* 212 Cal.App.3d at pp. 500-501.) A triable issue as to damages therefore remains.

■ Finally, we must determine whether there is a triable issue of fact as to whether plaintiff was constructively discharged. The trial court ruled

---

[3]*Koehrer, Gray,* and *Khanna* have been disapproved of on other grounds by the Supreme Court in *Foley* v. *Interactive Data Corp., supra,* 47 Cal.3d 654, 688-689.

in effect that because plaintiff remained on the job for five years after his transfer to archives, he could not prove that the conditions in which he worked were so intolerable as to have forced his resignation, thus negating this essential element of his action.

■■■■ ■ As to this element we are constrained to agree with the result reached by the trial court, though we reach that result by a somewhat different route.[4] The trial court apparently relied, as does Westinghouse here, on the holding in *Wagner* v. *Sanders Associates, Inc., supra*, 638 F.Supp. at page 742 that a claim for constructive discharge is barred as a matter of law unless an employee resigns immediately upon the onset of allegedly intolerable conditions. According to this view, remaining on the job for any significant period of time conclusively undercuts the employee's claim that conditions were in fact so intolerable as to have forced his resignation.

*Wagner,* however, is in conflict with a number of other federal authorities which treat the length of time an employee endures allegedly intolerable conditions as one circumstance within the totality of circumstances to be considered by the trier of fact in determining whether a constructive discharge has occurred. (See, e.g., *Watson* v. *Nationwide Ins. Co., supra,* 823 F.2d at p. 361; *Satterwhite* v. *Smith, supra,* 744 F.2d at p. 1382; *Nolan* v. *Cleland* (9th Cir. 1982) 686 F.2d 806, 813-814; *Clark* v. *Marsh* (D.C. Cir. 1981) 665 F.2d 1168 [214 App.D.C. 350].) Applying *Wagner's* restrictive approach in every case would preclude the trier of fact from considering whether an employee had a reasonable justification for remaining on the job despite the employer's allegedly intolerable actions.[5]

But while the *Wagner* standard may be too rigid, sound policy requires that there be a limit beyond which claims such as that of plaintiff here may not be asserted. The facts of this case present the anomaly that had plaintiff resigned immediately and claimed constructive discharge upon his transfer to archives, he would have had to file suit within two years,[6] yet plaintiff remained on the job for five years, under conditions which he asserts were intolerable almost from the moment of the transfer. All of the elements of

---

[4] We note the familiar rule that we must sustain the ruling of the trial court, without regard to the reasons given by that court, if the ruling was correct on any legal ground. (*West Pico Furniture Co.* v. *Superior Court* (1961) 56 Cal.2d 407, 413 [15 Cal.Rptr. 119, 364 P.2d 295].)

[5] Such justification might include for example ongoing and substantial efforts to resolve the situation with the employer or severe economic or psychological duress. The only justification offered by the plaintiff in *Wagner* was that he was looking for another job.

[6] Because the contract allegedly breached by defendants was not in writing, the applicable statute of limitations is Code of Civil Procedure section 339. (If the existence of a written contract could somehow be alleged, the applicable period would be four years (Code Civ. Proc., § 337), a difference which would not affect our holding here.)

plaintiff's contractual claims, including the job transfer and the intolerable conditions which are the critical element of a constructive discharge, existed and were known to plaintiff shortly after he was transferred in 1978; everything that is alleged to have occurred between that point and plaintiff's actual retirement would constitute additional injury rather than a new cause of action.[7]

■ In *DeRose* v. *Carswell* (1987) 196 Cal.App.3d 1011 [242 Cal.Rptr. 368], this court held in a different context that a plaintiff who had knowledge of sufficient facts to constitute a cause of action for assault and battery many years before filing suit could not avoid the bar of the statute of limitations by alleging delayed discovery of additional injury at a later date. To allow such an action to proceed would allow a plaintiff impermissibly to split a cause of action. (*Id.* at pp. 1025-1026.) We concluded that the time within which a plaintiff must commence an action begins to run " 'upon the occurrence of the last fact essential to the cause of action.' " (*Id.* at p. 1017, citing *Saliter* v. *Pierce Brothers Mortuaries* (1978) 81 Cal.App.3d 292, 296 [146 Cal.Rptr. 271].) In so doing we adhered to the holding of the Supreme Court in *Davies* v. *Krasna* (1975) 14 Cal.3d 502 [121 Cal.Rptr. 705, 535 P.2d 1161, 79 A.L.R.3d 807] that "the infliction of appreciable and actual harm, however uncertain in amount, will commence the statutory [limitations] period." (*Id.* at p. 514.)

■ Although the statute of limitations as such is not at issue here, the policy considerations discussed in *DeRose* and the cases cited therein lead us to conclude that the applicable limitations period must constitute an outer limit beyond which an employee may not, as a matter of law, remain employed after the onset of allegedly intolerable conditions and thereafter maintain a claim for wrongful constructive discharge. While an employee is not in every case required to resign immediately in order to maintain an action for wrongful constructive discharge (that question being an issue of fact), the employee may not unilaterally extend his or her right to sue for an injury already suffered simply by remaining on the job. Because plaintiff

---

[7] In response to a request for supplemental briefing, plaintiff asserted for the first time that defendant's actions constituted a continuing course of conduct and that plaintiff's working conditions did not actually become intolerable until he became eligible for early retirement in 1983. This assertion, however, is in conflict with plaintiff's own declaration that his situation became intolerable almost immediately in 1978. As defendant points out, plaintiff alleges virtually no wrongful acts on the part of defendant after 1981, when plaintiff became disabled. Moreover, plaintiff's belated claim that it was the availability of early retirement benefits in 1983 which finally made a previously difficult situation intolerable is legally insufficient: the intolerability of an employee's working conditions is determined objectively by reference to the conditions themselves (i.e., would a reasonable person similarly situated find the conditions intolerable) rather than on the basis of an individual employee's subjective reasons for remaining on the job, (e.g., a desire to wait until resignation is more economically beneficial). (See, *Wagner* v. *Sanders Associates, Inc., supra*, 638 F.Supp. 742.)

was aware of sufficient facts to file suit on his contractual claims in 1978 we hold that he is precluded from claiming that an actionable breach of contract, (i.e., constructive discharge) did not occur until he retired five years later.

DISPOSITION

The judgment is affirmed. Respondent shall recover its costs on appeal.

Agliano, P. J., and Cottle, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 1, 1990. Mosk, J., was of the opinion that the petition should be granted.