[No. B038280. Second Dist., Div. Two. Sept. 5, 1990.]

THOMAS LAURY FIDLER, Plaintiff and Respondent, v. HOLLYWOOD PARK OPERATING COMPANY et al., Defendants and Appellants.

484

COUNSEL

Gibson, Dunn & Crutcher, Robert Forgnone, David A. Cathcart and Pamela J. Thomason for Defendants and Appellants.

Portner & Collins and Michael G. Portner for Plaintiff and Respondent.

OPINION

ROTH, P. J.—Defendant Hollywood Park Operating Company appeals from an $898,101 judgment entered in favor of plaintiff Thomas Laury Fidler after a jury trial in a constructive wrongful discharge action. We will reverse the judgment and remand the cause for a new trial because after trial court proceedings were concluded but during the pendency of this appeal, the California Supreme Court issued its decision in *Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654 [254 Cal.Rptr. 211, 765 P.2d 373] which makes clear the matter was tried, in large part, on erroneous legal principles.

Defendant Hollywood Park Operating Company (hereinafter Hollywood Park) operates the Hollywood Park Race Track in Inglewood, California. Plaintiff Thomas Laury Fidler began working for Hollywood Park in 1963; in 1965, he joined the union, Local 280.

In April 1979, Local 280 went on strike. Shortly thereafter, Hollywood Park asked several employees, including Fidler, to cross the picket line and work as assistant mutuel managers. After these individuals raised questions in regard to job security, they each received a letter submitted by the Federation of California Racing Associations, Inc., on behalf of several race tracks, including Hollywood Park. In pertinent part, the letter stated: "As you are aware, the strike involving Local 280 has been in progress for fifteen days and a quick resolution does not presently appear to be imminent. You have in various ways raised some questions regarding your employment status. The purpose of this letter is to advise you of the position and desires of the Industry. This letter is not intended to be a contract or create legally binding obligation upon you or the Industry, it is merely a statement of intentions.

"The Industry wants you to continue your employment in the Industry in a management position. The Industry wants to create a cadre of management personnel who would not be union members. Due to the prior collective bargaining agreements with Local 280, this has never been possible.

During the present negotiations with Local 280, it is the Industry's intent and goal to remedy this situation. The Industry plans to accomplish this by the following revisions of the Local 280 agreement.

". . . . . . . . . . . . . . . ". . . . .

"In addition to the foregoing contract revisions, so long as management personnel desire, and provided they perform satisfactorily, the Industry intends to continue their normal circuit of employment in the non-union management positions . . . ." Thereafter, Fidler accepted the position of assistant mutuel manager and resigned from the union in January 1980.

The exact nature of subsequent events is subject to dispute. After the conclusion of the strike, Fidler claimed that contrary to his contract, Hollywood Park, without good cause, demoted him, fired and then rehired him, froze his pay, and then cut his salary. Hollywood Park, on the other hand, urged that Fidler's reassignment was not a demotion but part of an overall reorganization of the pari-mutuel department; that Fidler had not been fired; and that its decisions in regard to his salary were based upon its reasonable assessment of his job performance, including its concern about his handling of money. In any event, it is agreed that in April 1983, Fidler, at the age of 41, left his job at Hollywood Park and filed this lawsuit.

The primary thrust of Fidler's action at trial was a claim of constructive wrongful discharge. That is, he contended Hollywood Park breached its promise not to discharge him without good cause by forcing him to submit to intolerable working conditions which caused his resignation. (See, e.g., *Brady* v. *Elixir Industries* (1987) 196 Cal.App.3d 1299 [242 Cal.Rptr. 324].)

In regard to his economic losses, Fidler testifed that after leaving Hollywood Park, he continued to work at other race tracks but for less money than he had earned at Hollywood Park. Although he claimed he was unable to find any position comparable to what he had held at Hollywood Park, he conceded on cross-examination that his only efforts to find comparable employment consisted of reviewing the want ads and placing one telephone call to an employment agency.

To amplify his claim of economic losses, Fidler presented testimony from an economist, Dr. Brinton. Dr. Brinton testified Fidler's lost earnings up to the date of trial, minus an offset for past earnings, was $100,350. Assuming that Fidler, who at the time of trial was 47 years old, would work another 13 years until reaching the age of 60, Dr. Brinton claimed the present value of those future earnings would be $206,618. In reaching this figure, Dr. Brinton did *not* offset any future moneys Fidler would earn as he assumed,

contrary to Fidler's own testimony, that Fidler would not work in the future. Lastly, Dr. Brinton assigned a present value of $41,133 to Fidler's loss of vacation pay and expected pension benefits. Thus, Brinton concluded Fidler's total economic losses equalled $348,101.

Fidler further sought, as permitted by case law in effect at the time of trial, money damages to compensate him for the emotional distress he allegedly suffered as a result of his constructive wrongful discharge. In that regard, he testified about his emotional state as did his psychiatrist.

Lastly, in line with the then-prevailing legal theory, Fidler sought punitive damages, urging Hollywood Park had acted with fraud, malice, and oppression. In that regard, Fidler offered evidence on his theory that Hollywood Park had deliberately lied to him and the other employees whom it asked to work and leave the union during the strike. Fidler urged that Hollywood Park never had any intention of honoring its promise that those individuals would have permanent employment subject only to termination for good cause; that it only made those representations to induce them to work during the strike and once it was not economically feasible to retain them in management positions, it either laid them off or demoted them.

The jury returned special findings that an employment contract existed between Fidler and Hollywood Park which the latter had breached through constructive discharge. The jury awarded $348,101, the precise figure testified to by Fidler's expert witness Dr. Brinton, to compensate Fidler for this breach. The jury further found Hollywood Park had breached the implied covenant of good faith and fair dealing and set $100,000 as damages. Lastly, the jury found Hollywood Park had acted with oppression, fraud or malice. Pursuant to stipulation of the parties, the matter of the amount of punitive damages was tried thereafter to the trial judge who fixed $450,000 as the sum to be paid. Hollywood Park has appealed from this adverse judgment which totals $898,101.

The trial was conducted in the summer of 1988. In December 1988, our Supreme Court clarified the law of wrongful discharge in *Foley* v. *Interactive Data Corp., supra*, 47 Cal.3d 654, and held that as the implied covenant of good faith and fair dealing arises out of the contract itself, the breach of the covenant in the context of an employment situtation gives rise only to contract damages; tort remedies are not available. Hence, neither compensatory damages for emotional distress nor punitive damages are recoverable in a wrongful discharge action.

In *Newman* v. *Emerson Radio Corp.* (1989) 48 Cal.3d 973 [258 Cal.Rptr. 592, 772 P.2d 1059], filed in May 1989, the California Supreme Court held

that *Foley* "shall be given full retroactive effect as to all cases not yet final on January 30, 1989, the date that decision became final." (*Newman* v. *Emerson Radio Corp., supra*, 48 Cal.3d at p. 993.) As the present appeal was pending on January 30, 1989, *Foley*'s holding applies to this proceeding.

Fidler's arguments to defeat the application of *Foley* are patently frivolous. Hollywood Park was not required to raise during trial legal objections which were not recognized until five months later when *Foley* was decided. (See, e.g., *Fox* v. *Abrams* (1985) 163 Cal.App.3d 610, 614-615, fn. 4 [210 Cal.Rptr. 260].) Nor was Hollywood Park's stipulation that the trial judge would set the amount of punitive damages a waiver of its right to now move to strike the punitive damages award. Acceptance of Fidler's arguments would completely undercut the ruling in *Newman* that *Foley* is to be given retroactive application. We decline to do so.

In light of *Foley* and *Newman*, the $450,000 award of punitive damages cannot stand. ■ Moreover, the $100,000 award for breach of the implied covenant of good faith and fair dealing is no longer supportable. On this record, we conclude that award was made to compensate Fidler for his alleged emotional suffering. As noted earlier, his expert had placed a value of $348,101 on his economic losses alone, the exact amount the jury awarded on the breach of contract claim. The only other injury for which Fidler sought compensation from the jury was his emotional distress.[1] Hence, the only reasonable inference is that the $100,000 covers emotional distress damages. As Fidler's lawsuit does not fall within that extremely narrow class of cases in which emotional distress damages are recoverable in a contract action because breach of the contract foreseeably results in severe emotional distress (see, e.g., *Allen* v. *Jones* (1980) 104 Cal.App.3d 207 [163 Cal.Rptr. 445] [mortuary's handling of a dead body] and *Windeler* v. *Scheers Jewelers* (1970) 8 Cal.App.3d 844, 851 [88 Cal.Rptr. 39] [repair of heirloom jewelry]), the award cannot be sustained.

■ The more problematic aspect of the judgment is the $348,101 award for contract damages. Because *Foley* was not decided until after the conclusion of trial, Fidler was permitted to present testimony of his emotional distress. Moreover, as a prelude to his punitive damages claim, he was allowed to present evidence on his theory Hollywood Park had acted with fraud, malice and oppression in the exercise of its business decisions. However, as neither of these forms of damages is now cognizable in a wrongful discharge action, a plaintiff will no longer be permitted to offer evidence on those theories. But the jury in this case heard and considered those claims,

---

[1] During closing argument, Fidler's attorney did not suggest a particular figure to compensate for emotional distress.

evidence, and supporting jury instructions along with the conflicting evidence presented on the nature of and reasons for Hollywood Park's decisions to reassign Fidler and to change his salary.

Claims that either the employer's business decision was so unfair that it caused the employee emotional distress or that the employer's actions were so egregious as to find the predicates for punitive damages are particularly of the sort likely to inflame the jury and evoke passion. When a case is closely balanced, as was this one, those claims are likely to tilt the balance. In view of the fact that a wrongful discharge trial creates the danger of having a jury second-guess the employer's personnel decisions and business judgments (see, e.g., *Gonzales* v. *MetPath, Inc.* (1989) 214 Cal.App.3d 422, 428 [262 Cal.Rptr. 654]), a task which should be carried out in a singularly objective and dispassionate manner, it is particularly important that extraneous and prejudicial evidence not infect the jury's deliberations.

In sum, given the sharp evidentiary disputes on the threshold issues, we believe Fidler's introduction of evidence to prove now discredited claims denied Hollywood Park a fair trial resulting in a miscarriage of justice. (Cal. Const., art. VI, § 13.) ■■■■ The fairest result is to remand the matter for a new trial to be conducted consistent with *Foley* and its progeny.[2]

The judgment is reversed and the trial court is directed to conduct a new trial consistent with the views expressed herein. The parties to bear their own costs on appeal.

Gates, J., and Klein (B.), J.,* concurred.

Respondent's petition for review by the Supreme Court was denied December 20, 1990. Mosk, J., and Broussard, J., were of the opinion that the petition should be granted.

---

[2] Contrary to Hollywood Park's claim, raised for the first time on appeal, an action for constructive wrongful discharge will lie for breach of the promise to fire only for good cause and that theory survives *Foley*. (*Panopulos* v. *Westinghouse Electric Corp.* (1989) 216 Cal.App.3d 660, 667 [264 Cal.Rptr. 810] [rev. den.].)

Hollywood Park has also attacked several evidentiary rulings made by the court during the course of the trial. All of those rulings involved issues of relevancy. As the court's rulings necessarily entailed an evaluation of the parties' abilities to link the proffered evidence with their theory of the case, an ability which can change from one trial to the next, nothing would be gained by deciding whether the rulings made on the present record were correct.

* Assigned by the Chairperson of the Judicial Council.