[No. B048372. Second Dist., Div. Seven. June 27, 1991.]

ERNEST F. VALDEZ, Plaintiff and Appellant, v.
CITY OF LOS ANGELES et al., Defendants and Respondents.

**COUNSEL**

George Kezios for Plaintiff and Appellant.

James K. Hahn, City Attorney, Frederick N. Merkin and Robert Cramer, Assistant City Attorneys, for Defendants and Respondents.

**OPINION**

**WOODS (Fred), J.**—This is an employment discrimination action brought by a former police officer against the Los Angeles Police Department, the City of Los Angeles and other defendants. The trial court granted defendants' motion for summary judgment, and plaintiff appealed. For the reasons set

forth below, we affirm as to all defendants except the City of Los Angeles and reverse as to the city.

## FACTS AND PROCEEDINGS BELOW

Plaintiff Ernest Valdez joined the Los Angeles Police Department in December 1980 at the entry-level pay grade, Police Officer I. He advanced to Police Officer II in April 1982. Valdez made four unsuccessful attempts to advance to Police Officer III. These unsuccessful attempts form the gravamen of Valdez's complaint of discrimination based on his Hispanic ancestry.

Advancement to Police Officer III is a three-step process. First, applicants are given a written examination. Those who pass the written examination are given an oral examination. Candidates who complete the oral examination are rated in one of four categories: outstanding, excellent, very good or satisfactory. The list of candidates eligible for promotion remains in effect for two years. Ordinarily, a candidate in a higher category will be selected for promotion ahead of a candidate in a lower category. However, an "excellent" candidate may be selected ahead of an "outstanding" candidate if no "outstanding" candidate applies for a particular opening or if the "excellent" candidate possesses specialized skills required by the particular opening.

According to the defendants, for the past several years, going back to before 1985, the police department has exhausted the pool of "outstanding" candidates well before the expiration of the eligibility list and has promoted many candidates rated "excellent" to Police Officer III.

Plaintiff Vandez took the written test for Police Officer III in 1982, 1983 and 1984. He failed each time. Finally, in March 1985 he passed the written examination and was allowed to take the oral examination in May 1985. Following the oral examination, Valdez was rated "excellent," the second category. The eligibility list derived from this examination was effective for a two-year period—May 1985 to May 1987.

Valdez resigned from the police department effective December 15, 1985. On December 4, 1986, Valdez filed a charge with the California Department of Fair Employment and Housing claiming his resignation was a constructive discharge. He based this claim on the grounds that the advancement system in the police department discriminated against him as a Hispanic and "[t]he many denials of advancement opportunities were so distressing that I was forced to resign." The Department of Fair Employment and Housing found "insufficient evidence to prove [a] violation" and notified Valdez on

May 7, 1987, of his right to file a civil action within one year of the notice. Valdez filed a civil action for employment discrimination on May 4, 1988.

Valdez's complaint alleged that the written and oral examinations for promotion to Police Officer III discriminate against Hispanics, such as himself. He further alleged that because of his Hispanic ancestory he was denied training opportunities and work assignments which would have increased his opportunity for advancement. Finally, he alleged the foregoing acts of discrimination resulted in his constructive discharge from the police department.

Defendants answered Valdez's complaint denying its material allegations. Defendants then moved for summary judgment.

Defendants' motion for summary judgment rested on four grounds: (1) Valdez's claims of discrimination arising from the police department's promotion practice were not timely filed with the Department of Fair Employment and Housing; (2) Valdez's complaint fails to state a cause of action for constructive discharge; (3) the claims against the individual defendants are barred because none of them were named in the charges filed with the Department of Fair Employment and Housing; and (4) the Los Angeles Police Department cannot be sued for damages.

Defendants made no attempt to produce evidence refuting Valdez's allegations of discrimination in the police department's promotion practices. Nor did defendants produce any evidence bearing on Valdez's working conditions. The sole declaration in support of defendants' motion for summary judgment was filed by an officer in charge of the police department's employee relations division. The declaration reviews Valdez's employment history as described above and states the declarant is not aware of any intent to discriminate against Valdez or any discriminating effect in the department's promotion practice for the grade of Police Officer III.

Valdez's declaration in opposition to the motion for summary judgment also recites his employment history. The declaration mentions a new fact not alleged in the complaint. Valdez states he was not "provided the necessary backup on emergencies when other patrol vehicles were in the vicinity [and] such requests were made."

In his deposition, Valdez was asked why he resigned. He responded, "I felt it was hazardous to my health while I was working Northeast Division." Asked to elaborate on this statement, Valdez testified, "I did not have backup when I was supposed to have backup in a situation when clearly there were

officers there . . . that happened several times." Valdez was asked why, in his opinion, he did not receive backup. He answered, "the nonminority officers in that division felt that I was stirring the pot, so to speak, and that maybe minorities are coddled too much already." Valdez further stated nonminority officers in the department felt unqualified minority officers were being promoted and one (unidentified) lieutenant told him in effect to "keep my mouth shut." The references to "stirring the pot" and "keeping his mouth shut" appear to refer to grievances Valdez had previously filed with the department over the Police Officer III promotion system. Valdez challenged the department's refusal to allow candidates who failed the written examination to review their test results and challenged his "excellent" rating from the oral examination.

As previously noted, the trial court granted summary judgment to all defendants and Valdez appealed.

### I. Triable Issues of Fact Exist as to the Continuing Nature of the Defendants' Alleged Discrimination in Promotion of Hispanic Police Officers.

#### A. Basis For Summary Judgment.

■ It is well settled summary judgment is proper only if the documents in support of the moving party would be sufficient to sustain a judgment in its favor. Where, as here, the moving party is the defendant, it must either negate a necessary element of the plaintiff's case or state a complete defense. (*Estate of Fisher* (1988) 198 Cal.App.3d 418, 423 [244 Cal.Rptr. 5].) The declarations of the moving party are strictly construed; those of the responding party are construed liberally. (*Empire West* v. *Southern California Gas Co.* (1974) 12 Cal.3d 805, 808 [117 Cal.Rptr. 423, 528 P.2d 31].) Regardless of where the burden of proof would lie at trial, the burden is on the party moving for summary judgment to negate its opponent's claims. (*Security Pac. Nat. Bank* v. *Associated Motor Sales* (1980) 106 Cal.App.3d 171, 179 [165 Cal.Rptr. 38].)

These well-settled rules bear repeating here because defendants argue throughout their brief on appeal summary judgment was proper because *plaintiff* offered no evidence tending to show defendants' continuing violation of laws prohibiting employment discrimination. Defendants misconstrue the summary judgment procedure. ■ As we stated in *Estate of Fisher, supra*, 198 Cal.App.3d at page 425:

"In order to obtain a summary judgment, the moving party must submit declarations or other evidence sufficient to establish each element necessary

to sustain a judgment in [its] favor. Unless [it] does, summary judgment should be denied, *even if the opposing party files no declarations whatsoever.*" (Italics added.)

The foregoing rules are applicable to employment discrimination cases. In *University of Southern California v. Superior Court* (1990) 222 Cal.App.3d 1028 [272 Cal.Rptr. 264], plaintiff Miller claimed the university discriminated against her because she was a woman by refusing to promote her from the rank of associate professor to full professor. The trial court denied the university's motion for summary judgment, and the university petitioned for a writ of mandate directing the trial court to grant the motion. The appellate court granted the writ, finding the university's declarations established as a matter of law a legitimate, nondiscriminating basis for not promoting Dr. Miller. For our purposes the pertinent part of the court's opinion was its analysis of the burdens borne by the respective parties on the motion for summary judgment.

In the trial of an employment discrimination case, the court held, the plaintiff has the burden of proving a prima facie case of discrimination. If the plaintiff succeeds in proving a prima facie case, the burden shifts to the defendant to " ' "articulate some legitimate, nondiscriminatory reason for the employee's rejection." ' " (222 Cal.App.3d at p. 1035.) If the defendant carries this burden, the plaintiff bears the burden of proving the legitimate reasons offered by the defendant were not its true reasons but a pretext for discrimination. (*Ibid.*)

The court then stated: "Although the burden of proof in [an employment discrimination] action claiming an unjustifiable refusal to promote ultimately rests with the plaintiff . . . in the case of a motion for summary judgment or summary issue adjudication, the burden rests with the moving party to negate the plaintiff's right to prevail on a particular issue. . . . In other words, the burden is reversed in the case of a . . . summary judgment motion. . . . In any event, either at the time of trial or a pretrial summary issue adjudication motion, the burden would rest with [the university] to prove that there was '"some legitimate, nondiscriminatory reason . . . for refusing to promote Dr. Miller . . . ."' " (Citations omitted.) (222 Cal.App.3d at p. 1036.)

As the foregoing authorities clearly demonstrate, on a defendant's motion for summary judgment, as contrasted to a trial, the defendant cannot rely on the plaintiff's failure to produce evidence establishing a prima facie case of discrimination. The defendant must present undisputed evidence negating a claim of disparate treatment or establishing an undisputed legitimate, nondiscriminatory basis for plaintiff's rejection. (Cf. *Mixon* v. *Fair Employment*

& *Housing Com.* (1987) 192 Cal.App.3d 1306, 1320 [237 Cal.Rptr. 884].) In the present case, defendants failed to do either.

**B.** *A Triable Issue of Fact Exists As to the Continuing Nature of the Alleged Discrimination.*

In their motion for summary judgment, defendants made no attempt to show the promotional system was nondiscriminatory. Instead, they relied exclusively on the argument that Valdez's claims of discrimination were time-barred because they were based on acts which occurred more than one year before he filed his charge with the Department of Fair Employment and Housing. Under Government Code section 12960, a complaint charging employment discrimination must be filed with the department within "one year from the date upon which the alleged unlawful practice . . . occurred." ■ Discrimination complaints not timely filed with the department cannot be the basis for a civil action against the employer. (*Fisher v. San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 614, fn. 9 [262 Cal.Rptr. 842].) ■ Defendants argue that because the last possibly discriminatory act by defendants relative to promotion took place in November 1985, Valdez's complaint filed with the department on December 4, 1986, was untimely.

Valdez argued his discrimination claim was timely filed because the defendants' discriminatory promotion practices constituted a continuing violation of the law. ■ Under the doctrine of "continuing violations" an administrative complaint charging discrimination is timely if the discriminatory system is maintained into the limitations period. Cases challenging discriminatory promotional systems are a prime example of the application of the "continuing violation" doctrine. (See, e.g. *City and County of San Francisco* v. *Fair Employment & Housing Com.* (1987) 191 Cal.App.3d 976, 983 [236 Cal.Rptr. 716] and discussion, *post.*)

■ Valdez presses this same argument on appeal. Defendants respond that his discrimination claims do not fall into the category of continuing violations and, even if they do, Valdez has not suffered any injury because he passed the 1985 written test and, had he not resigned, he stood a good chance of being promoted based on his "excellent" rating from the oral examination. We consider each of these arguments below.

1. *Continuing Nature of the Violation.*

Assuming defendants' promotional system was discriminatory, maintenance of that system within one year preceding Valdez's filing his claim makes the claim timely. The case of *City and County of San Francisco* v. *Fair*

*Employment & Housing Com., supra*, 191 Cal.App.3d 976, is directly on point. In that case, the challenged promotional examination was given in October 1978, and the resulting list of persons eligible for promotion was adopted in March 1979. The administrative complaint was not filed until June 1980, more than one year after adoption of the eligibility list and 20 months after the examination. Nevertheless, the court held the administrative complaint was timely filed "[s]ince it is undisputed the fire department made promotions from the eligibility list during the year preceding the filing of the complaint." (*Id.*, at p. 983.)

The court in *City and County of San Francisco* based its decision on analogous cases arising under title VII of the Federal Civil Rights Act of 1964 (42 U.S.C. § 2000 et seq.) (191 Cal.App.3d at p. 983.) For example, in *Williams* v. *Owens-Illinois, Inc.* (9th Cir. 1982) 665 F.2d 918, 924 the court held that "a systematic policy of discrimination is actionable even if some or all of the events evidencing its inception occurred prior to the limitations period." To illustrate the continuing violations doctrine the *Williams* court explained: "A minority employee who is not promoted in 1973, for example, and is subject to a continuing policy against promotion of minorities, may then file a timely charge in 1976, because the policy against promoting him or her continued to violate the employee's rights up to the time the charge was filed." (*Ibid.*)

In the present case the evidence shows Valdez passed the written examination given in March 1985 and took the oral examination in May 1985. Based on the oral examination, Valdez was ranked in the second tier of officers eligible for promotion to Police Officer III. The eligibility list based on the May 1985 oral examinations had a two-year life span. If, as Valdez alleges, the oral examination was unlawfully discriminatory, that unlawful discrimination was of a continuing nature beginning with the administration of the examination and continuing through the life of the eligibility list. The eligibility list did not expire until May 1987, five months *after* Valdez filed his complaint with the Department of Fair Employment and Housing.[1] (Cf. *City and County of San Francisco, supra*, 191 Cal.App.3d at p. 983.)

Defendants rely on *United Air Lines, Inc.* v. *Evans* (1977) 431 U.S. 553 [52 L.Ed.2d 571, 578-579, 97 S.Ct. 1885] for the proposition that an administrative charge is not timely if it is based merely on the present effect of a past, time barred, discriminatory act. *Evans* is inapposite to cases

---

[1] We are not holding Valdez's civil action is limited to the May 1985 oral examination. Valdez alleges the written examination he took and failed in March 1984 was also unlawfully discriminatory. If he can prove that allegation and prove the life of the eligibility list that ultimately resulted from the March 1984 examination extended past December 4, 1985, his administrative complaint, filed December 4, 1986, would be timely as to that examination.

challenging discriminatory promotion practices existing within the limitations period. In *Evans*, the plaintiff was forced to resign from the airline in 1968 under a policy that forbade female flight attendants to be married. Plaintiff never challenged this no-marriage policy, and the airline repealed it soon after she resigned. In 1972 the airline rehired her as a new employee and refused to credit her with her pre-1972 service. Plaintiff claimed the airline's refusal to credit her previous service gave present effect to its past discriminatory treatment and, therefore, her discrimination claim, filed after she was rehired, was timely. The court agreed the airline's seniority system gave present effect to its past discrimination but held that was not enough to bring her complaint within the title VII limitations period. The court stated, "the emphasis should not be placed on mere continuity; the critical question is whether any present *violation* exists. She has not alleged that the system discriminates against former female employees or that it treats former employees who were discharged for a discriminatory reason any differently from former employees who resigned or were discharged for a non-discriminatory reason. In short, the system is neutral in its operation." (Original italics, fn. omitted.) (*Id.*, at p. 558.)

*Evans* is distinguishable from promotion cases such as *City and County of San Francisco* and the case before us because the employer, during the limitations period, is making promotions from a list tainted by discrimination. Therefore, a present violation of the plaintiff's rights exists. *Evans* was a case involving the continuing impact of a past violation while the case before us involves a continuing violation. (See, *Reed* v. *Lockheed Aircraft Corp.* (9th Cir. 1980) 613 F.2d 757, 760.)

### 2. *The 1985 Written Examination.*

Defendants contend Valdez has no claim as to the March 1985 written examination because he passed it. Defendants' contention is correct but irrelevant. As we explained, Valdez alleges that the oral examination that followed the 1985 written examination was discriminatory.

### 3. *Resignation During the Life of the 1985-1987 Promotion List.*

Defendants argue, without any citation to authority, that Valdez cannot challenge the 1985 oral examination because as a result of his performance on that examination he was eligible for the promotion he sought. Eligibility for promotion based on the 1985 list extended to May 1987. Valdez resigned in December 1985.

It is undisputed that Valdez was placed in the second tier of promotion-eligible employees and that he was not promoted prior to his resignation in

December 1985. Valdez alleges that his placement in the second tier instead of the first was a discriminatory act on the part of defendants based on Valdez's Hispanic ancestry. If Valdez's allegation is true he suffered an injury on the day he was placed in the second tier and that injury continued every day Valdez remained in defendant's employ. The fact he resigned may affect his damage award but it does not affect his cause of action. (*Thorne* v. *City of El Segundo* (9th Cir. 1986) 802 F.2d 1131, 1134, 1136, fn. 4.)

If we accepted the defendant's argument, an employee like Valdez would be forced into the onerous choice of continuing to serve a master who has treated him unfairly and continues to treat him unfairly or foregoing any redress for the unfair treatment. Clearly, such a result would frustrate the "declared . . . public policy of this state . . . to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination [and] . . . to provide effective remedies which will eliminate such discriminatory practices." (Gov. Code, § 12920.)

## II. *Triable Issues of Fact Exist as to Valdez's Claim of Constructive Discharge.*

Defendants concede that Valdez's claim of constructive discharge was timely filed with the Department of Fair Employment and Housing. They contend, however, that Valdez's complaint fails to state a cause of action for constructive discharge because it does not allege that he was subjected to intolerable working conditions or that his employer had actual or constructive knowledge of intolerable working conditions.

A defendant's motion for summary judgment necessarily includes a test of the sufficiency of the complaint. (*Centinela Hospital Assn.* v. *City of Inglewood* (1990) 225 Cal.App.3d 1586, 1595 [275 Cal.Rptr. 901].) When a motion for summary judgment is used to test whether the complaint states a cause of action, the court will apply the rule applicable to demurrers and accept the allegations of the complaint as true. (*Miller* v. *Glass* (1955) 44 Cal.2d 359, 360 [282 P.2d 501].)

In order to establish a constructive discharge, the employee must show: "(1) the actions and conditions that caused the employee to resign were violative of public policy; [¶] (2) these actions and conditions were so intolerable or aggravated at the time of the employee's resignation that a reasonable person in the employee's position would have resigned; and [¶] (3) facts and circumstances showing that the employer had actual or constructive knowledge of the intolerable actions and conditions and of their impact on the employee and could have remedied the situation." (*Brady* v. *Elixir Industries* (1987) 196 Cal.App.3d 1299, 1306 [242 Cal.Rptr. 324].)

Defendants contend that Valdez's complaint fails to allege facts establishing an intolerable working condition and defendants' knowledge of such a condition. We disagree.

A. *The Complaint Alleges Working Conditions That a Trier of Fact Could Conclude Were So Intolerable That a Reasonable Person in Valdez's Position Would Resign.*

Whether conditions were so intolerable as to justify a reasonable employee's decision to resign is normally a question of fact. (*Thomas* v. *Douglas* (9th Cir. 1989) 877 F.2d 1428, 1434.) Situations may exist, however, where the employee's decision to resign is unreasonable as a matter of law. In general, a "single isolated instance" of employment discrimination is insufficient as a matter of law to support a finding of constructive discharge. (*Nolan* v. *Cleland* (9th Cir. 1982) 686 F.2d 806, 813.) Thus, the mere failure to promote the plaintiff, even if unlawfully discriminatory, will not support a finding of constructive discharge. (*Irving* v. *Dubuque Packing Co.* (10th Cir. 1982) 689 F.2d 170, 174; *E.E.O.C.* v. *Federal Reserve Bank of Richmond* (4th Cir. 1983) 698 F.2d 633, 672, revd. on other grounds *sub nom. Cooper* v. *Federal Reserve Bank of Richmond* (1984) 467 U.S. 867 [81 L.Ed.2d 718, 104 S.Ct. 2794]; *Wardwell* v. *School Bd. of Palm Beach County, Fla.* (11th Cir. 1986) 786 F.2d 1554, 1558.) Nor is it sufficient to show only that the employee received a poor performance rating. (*Junior* v. *Texaco, Inc.* (5th Cir. 1982) 688 F.2d 377, 380; *Caslin* v. *General Elec. Co.* (6th Cir. 1982) 696 F.2d 45, 47.)

■ The general rule, established in title VII cases, requires that a plaintiff alleging constructive discharge show the existence of "aggravating factors." (*Watson* v. *Nationwide Ins. Co.* (9th Cir. 1987) 823 F.2d 360, 361.) This requirement can be met by showing a "continuous pattern of discriminatory treatment over a period of years." (*Nolan* v. *Cleland, supra,* 686 F.2d at p. 813.)

In *Nolan,* the court of appeal reversed the district court's summary judgment for defendants. The district court had held that as a matter of law Ms. Nolan's resignation from the Veterans' Administration was not a constructive discharge. The appellate court found that the facts showed numerous instances of discrimination against Ms. Nolan. She was not permitted to participate in the VA Graduate Employment Program. She was refused necessary evaluation which the district court found was discriminatorily motivated. She was assigned to a position she had not requested. (686 F.2d at p. 813.) After reviewing these facts, the court of appeal concluded,

"It is our opinion that this history of unlawful discrimination provides sufficient aggravating factors that may have made Nolan's position

intolerable and raises a genuine issue of material fact that a reasonable person would have felt compelled to resign under such circumstances. Therefore, we reverse the district court's grant of summary judgment on the resignation issue." (*Id.*, at p. 814.)

In *Clark* v. *Marsh* (1981) 665 F.2d 1168, 1174 [214 App.D.C. 350], the court upheld the trial court's finding of constructive discharge based on "a continuous pattern of discriminatory treatment encompassing deprivation of opportunities for promotion, lateral transfer, and increased educational training, existing over a period of several years."

In the present case, Valdez alleges more than a single isolated instance of discrimination. He alleges a continuous pattern of discrimination which began in 1982 and included discriminatory promotional examinations, deprivation of training opportunities, having to meet a higher standard of performance than non-Hispanics, and denial of assignments which could have led to advancement opportunities.

We believe these facts, taken as true, (see discussion, *ante*), constitute sufficient aggravating factors such that a trier of fact could (but not necessarily would) conclude a reasonable employee would be justified in resigning .[2]

Defendants argue the fact that Valdez remained on the job for over a year after the onset of allegedly intolerable conditions demonstrates as a matter of law that the conditions were not intolerable. Defendants rely on *Panopulos* v. *Westinghouse Electric Corp.* (1989) 216 Cal.App.3d 660, 670 [264 Cal.Rptr. 810], which held "the applicable limitations period must constitute an outer limit beyond which an employee may not, as a matter of law, remain employed after the onset of allegedly intolerable conditions and thereafter maintain a claim for wrongful constructive discharge." According to defendants, the outer limit is one year based on the statute of limitations for personal injury actions. (Code Civ. Proc., § 340, subd. (3).) *Panopulos* does not specify the applicable limitations period for a constructive discharge although it analogizes to actions for assault and battery which come within Code of Civil Procedure section 340, subdivision (3). Alternatively, it could be argued the applicable limitations period is the three-year period for

---

[2]We also note Valdez's testimony of resentment toward him on the part of some of his fellow officers on the basis of his ancestry. According to Valdez, this resentment was manifested through the refusal of these officers to provide backup to Valdez on several occasions when he called for it. The psychological stress and increased physical danger of going into the field unable to count on fellow officers for assistance could itself represent an intolerable condition. Valdez may seek leave of court to amend his complaint in this respect. (*Watson* v. *Department of Rehabilitation* (1989) 212 Cal.App.3d 1271, 1288 [261 Cal.Rptr. 204].)

actions based upon a liability created by statute. ■■ We need not decide this question because we find the basic premise of *Panopulos* is wrong, and we decline to adopt it. We find no basis in precedent or logic for holding an employee who remains on the job beyond some arbitrarily set time limit is barred as a matter of law from claiming work conditions were intolerable.

The *Panopulos* court cites no authority for a judicially created outer limit on how long an employee has to resign after the onset of allegedly intolerable working conditions. Indeed, as *Panopulos* itself recognizes, such a judicially created time limit conflicts with federal cases which treat the length of time an employee remains on the job under allegedly intolerable conditions as one circumstance within the "totality of circumstances" to be considered by the trier of fact. (216 Cal.App.3d p. 669.)

For example, in *Nolan v. Cleland, supra,* 686 F.2d at pages 813-814, the court held a showing of four incidents of discrimination over a two-year period created an issue of fact for trial. In *Clark v. Marsh, supra,* 665 F.2d at page 1170, the plaintiff endured a pattern of discriminatory treatment for over five years before resigning. The opinion in *Watson v. Nationwide Ins. Co., supra,* 823 F.2d at page 362, suggests the longer the pattern of discriminatory treatment the more aggravating. The court stated the facts in Watson's case, "though covering a shorter period than in *Nolan* [two years], could constitute the necessary aggravating factors . . . to justify resigning." California courts too have upheld claims of constructive discharge where the intolerable conditions complained of began more than a year before the plaintiff resigned. (See, *Brady v. Elixer Industries, supra,* 196 Cal.App.3d at p. 1302; *Zilmer v. Carnation Co.* (1989) 215 Cal.App.3d 29, 34, 38-39 [263 Cal.Rptr. 422]; *Fidler v. Hollywood Park Operating Co.* (1990) 223 Cal.App.3d 483, 486 [272 Cal.Rptr. 895].)

The length of time the plaintiff remained on the job is relevant in determining the severity of the impact of the working conditions but does not as a matter of law prevent the plaintiff from proceeding with a claim for wrongful discharge. Some employees may stay on the job and endure very difficult circumstances that might have caused others similarly situated to quit sooner. Financial circumstances may not allow the employee the luxury of resigning before finding other employment. But the fact that for a time circumstances prevented the employee from resigning certainly does not decrease the burden the employer has placed on him. (Cf. *Rutan v. Republican Party of Illinois* (7th Cir. 1989) 868 F.2d 943, 956.)

The question for the trier of fact in wrongful discharge cases is what a reasonable person in the employee's position would have done. (*Brady v.*

*Elixir Industries, supra,* 196 Cal.App.3d at p. 1306.) Applying *Panapulos*'s arbitrary outer limit in every case precludes the trier of fact from considering whether an employee had a reasonable basis for remaining on the job despite the employer's allegedly intolerable actions. *Panapulos* is also inconsistent with the notion that the policy against employment discrimination is best served when employees, if possible, attack discrimination within the context of their existing employment relationships. (See, *Watson* v. *Nationwide Ins. Co., supra,* 823 F.2d at p. 361.) Here, for example, Valdez took some steps during his employment to try to improve the promotional system by filing grievances challenging the nonreviewability of the written tests and his second tier rating after the oral examination.

> B. *Defendants' Knowledge of the Alleged Intolerable Conditions May Be Inferred From the Nature of the Conditions.*

In *Brady,* the court held that in order to establish a tortious constructive discharge the plaintiff must show the employer had actual or constructive knowledge of the allegedly intolerable conditions, their impact on the employee, and could have remedied the situation. (*Brady* v. *Elixir Industries, supra,* 196 Cal.App.3d at p. 1306.)

For pleading purposes, Valdez met these requirements. Clearly, defendants, high-level managers of the police department, can be charged with imputed knowledge of personnel actions related to Valdez's assignments and training. Furthermore, if it is true, as Valdez alleges, that the police department discriminated against Hispanics, including Valdez, in its practices related to promotions, training opportunities, standards of performance and work assignments, it follows that defendants had actual or constructive knowledge of these discriminatory acts and could have remedied them. (Cf. *Taylor* v. *Jones* (8th Cir. 1981) 653 F.2d 1193, 1197-1199; *Castro* v. *Beecher* (D.Mass. 1971) 334 F.Supp. 930, 943.)

As the *Brady* court recognized, the majority view in title VII actions is that the employee need not prove the employer imposed intolerable conditions with the intent of forcing the employee to resign. (*Brady* v. *Elixir Industries, supra,* 196 Cal.App.3d at p. 1305.) The majority view is that the employer is liable if it "deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." (*Bourque* v. *Powell Electrical Mfg. Co.* (5th Cir. 1980) 617 F.2d 61, 65.) We find no authority in *Brady* for defendants' argument that Valdez must plead and prove that he notified defendants that he believed discrimination on the basis of race, ancestry, or national origin had prevented his

advancement in the police department. Where, as in the present case, the discrimination is systematic the employer is presumed to be aware of it.[3]

### III. *Defendants Los Angeles Police Department, Daryl Gates, Chester Spencer, and Robert Taylor Were Improperly Named as Parties to This Action.*

 Defendants Daryl Gates, Chester Spencer and Robert Taylor are admittedly agents of defendant City of Los Angeles and, therefore, "employers" for purposes of the Fair Employment and Housing Act. (Gov. Code, §§ 12926, subd. (c); 12940, subd. (a).) However, none of these defendants were named in the charge Valdez filed with the Department of Fair Employment and Housing.[4]

We have found no California case addressing the question whether a civil suit is permissible against a party not named in a complaint filed with the Department of Fair Employment and Housing.[5] In *Watson* v. *Department of Rehabilitation, supra,* 212 Cal.App.3d at page 1288, we took the view that testimony of harrassment at the time of trial which had not been specified in plaintiff's charges to the Department of Fair Employment and Housing was not reversible error since the additional acts of harrassment could have been discovered through discovery processes by the defendant but were not. Additionally, we found a waiver of the alleged error for failure to raise the issue in the trial court. We construed the function of an administrative complaint to provide the basis for an investigation into an employee's claim of discrimination and not as a "limiting device." (*Ibid.*) However, we draw a distinction between a failure to include with specificity *all* charges of discrimination in an administrative complaint and the failure to name as defendants those persons known, or obtainable through reasonable diligence,[6] to have perpetrated or inflicted the discrimination and who are sought to be held individually accountable in a suit at law. It is consonant with the Fair Employment and Housing Act to liberally construe allegations

---

[3]The present case is distinguishable from cases that do not involve systematic discrimination by the employer. For example, in cases of sexual harassment by a supervisor or co-employee, the employer's liability may turn on the question of notice to appropriate company officials. (See, *Meritor Savings Bank* v. *Vinson* (1986) 477 U.S. 57, 71-72 [91 L.Ed.2d 49, 62-63, 106 S.Ct. 2399]; *Katz* v. *Dole* (4th Cir. 1983) 709 F.2d 251, 254.)

[4]The Los Angeles Police Department does not meet the statutory definition of an employer and was properly dismissed from the action.

[5]Government section 12960 provides such a complaint "shall state the name and address of the person [or] employer . . . alleged to have committed the unlawful practice complained of and . . . shall set forth the particulars thereof . . . ."

[6]Daryl Gates is the Chief of Police of the Los Angeles Police Department; Chester Spencer is the Director of the Employee Relations Unit of the Los Angeles Police Department; Robert Taylor is the Commanding Officer of the Northeast Division of the Los Angeles Police Department.

that are general in nature. On the other, it is equally consonant with the act to require the exhaustion of administrative remedies (by charging all those who are sought to be accountable) to enable a speedy resolution of violations of the act without the delays attendant to a lengthy civil trial. For a claimant to withhold naming of known or reasonably obtainable defendants at the administrative complaint level is neither fair under the act in its purpose of advancing speedy resolutions of claims nor fair to known, but unnamed individuals, who at a later date are called upon to "personally" account in a civil lawsuit without having been afforded a right to participate at the administrative level.

Federal courts construing title VII have disagreed over whether a defendant in a civil suit must have been named in the administrative complaint. The Ninth Circuit permits a suit against an unnamed party if the party's involvement was likely to have been revealed in the course of the administrative investigation. (*Chung* v. *Pomona Valley Community Hospital* (9th Cir. 1982) 667 F.2d 788, 792.) The Fourth Circuit takes a more restrictive view, requiring that the party must have been named somewhere in the body of the charge. (*Mickel* v. *South Carolina State Employment Service* (4th Cir. 1967) 377 F.2d 239, 242.) The Seventh Circuit takes a middle ground in which suing an unnamed party is subject to a balancing of equitable considerations. (*Tillman* v. *City of Milwaukee* (7th Cir. 1983) 715 F.2d 354, 360.)

The case of *White* v. *North Louisiana Corp.* (W.D.La. 1979) 468 F.Supp. 1347, relied on by defendants, involved a claim of sex discrimination by an unsuccessful candidate for the position of executive director of a nonprofit corporation. The suit named as a defendant the president of the corporation's board of directors, Bob McLeod. The court granted McLeod's motion to dismiss on the ground he had not been named in White's administrative complaint to the Equal Employment Opportunity Commission. The court based its decision on the undisputed facts contained in McLeod's affidavit that he had no power to hire White, no opportunity to participate in conciliation proceedings with the Equal Employment Opportunity Commission and no power to alleviate White's grievances. In addition, the court found White would suffer no prejudice by dismissal of McLeod from the lawsuit. (*Id.*, at p. 1349.)

We are convinced that the rule expressed in *Mickel* and *White* is more efficacious, will lead to more speedy resolution of disputes at the administrative level and is in keeping with the requirement of exhaustion of administrative remedies. We therefore hold that failure to name Gates, Spencer and Taylor in the administrative complaint is fatal to the right to bring an action against them in the trial court.

DISPOSITION

The judgment is affirmed as to all defendants except the City of Los Angeles. The judgment is reversed as to the City of Los Angeles. Appellant is awarded costs on appeal against the City of Los Angeles.

Lillie, P. J., concurred.

**JOHNSON, J., Concurring and Dissenting.**—I concur in parts I and II of the majority opinion and in part III insofar as it holds the Los Angeles Police Department was properly dismissed as a defendant. However, I respectfully dissent from the majority's holding Gates, Spencer and Taylor were improperly named as defendants in this action.

As the majority acknowledges, no California case has addressed the question whether a civil suit is permissible against a party not named in a complaint filed with the Department of Fair Employment and Housing. However, in *Watson* v. *Department of Rehabilitation* (1989) 212 Cal.App.3d 1271, 1288 [261 Cal.Rptr. 204] we took the view Government Code section 12960[1] should be liberally construed in terms of its pleading requirement. We held, therefore, the defendant was not prejudiced by the trial court's admission of evidence showing examples of harassment beyond those contained in Ms. Watson's administrative complaint. We construed the administrative complaint to provide the basis for an investigation into an employee's claim of discrimination not as a "limiting device." (*Ibid.*)

I believe we should apply the same liberality to Valdez's claim we applied to Watson's. Section 12960 requires the claimant to state the name of the "person [or] employer" alleged to have committed "the unlawful practice complained of . . . ." However, the complaint form furnished Valdez by the Department of Fair Employment and Housing makes no mention of naming the "person" who discriminated against the claimant. The form states: "NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME." Below this statement is a box labeled "name." Valdez filled in this box: "Los Angeles, City of, Police Department." The statutory requirement Valdez name the "employer" who discriminated against him is ambiguous. Who was Valdez's employer? The City of Los Angeles? The Los Angeles Police Department? Chief of Police Daryl Gates? His division commander, Robert Taylor? Lawyers confronted with questions like this typically resolve them by naming everyone in sight. But Valdez is not a lawyer, and requiring a claimant to hire a lawyer to complete

---

[1]Unless otherwise indicated, all statutory references are to the Government Code.

a discrimination claim form would be antithetical to the purposes of the legislation.[2] Furthermore, the ambiguity of section 12960 is compounded by the complaint form which fails to notify the claimant he or she should name the "person" alleged to have committed discriminatory acts. If the form had contained such notice it is reasonable to believe Valdez would have named Gates, Spencer and Taylor. Certainly, the contrary cannot be assumed, without evidence, on defendants' motion for summary judgment.

As noted by the majority, federal courts construing title VII have disagreed over whether a defendant in a civil suit must have been named in the administrative complaint. In my view, California courts should follow the approach of the Ninth Circuit which permits suit against an unnamed party if the party's involvement was likely to have been revealed in the course of the administrative investigation. (*Chung* v. *Pomona Valley Community Hospital* (9th Cir. 1982) 667 F.2d 788, 792.) In *Chung*, the plaintiff, a medical technologist, filed a charge with the federal Equal Employment Opportunity Commission alleging the hospital where he worked had discriminated against him on the basis of race in the terms and conditions of his employment including denying him promotions and training opportunities. Drs. Palma, Spencer, Cadman and Hoblit directed the laboratory in which Chung worked and participated in promotional decisions about Chung. The doctors were not named in Chung's administrative complaint but were named as defendants in his civil action. The court rejected the doctors' argument Chung could not recover on his claims against them because he did not name them in his administrative complaint. The court stated, "Both the EEOC and the doctors should have anticipated that Chung would name in his suit those who denied him the promotions mentioned in the charge. Therefore, Chung's charge supplied an adequate basis for his Title VII claims against the doctors." (667 F.2d at p. 792.)

The case before us is more like *Chung* than *White* v. *North Louisiana Corp.* (W.D. La. 1979) 468 F.Supp. 1347 relied on by the majority. The individual defendants in this action are the chief of police, the director of the police department's employee relations unit and the commander of the division where Valdez last worked before his resignation. As such they were directly or indirectly responsible for the police department's alleged discriminatory

---

[2]The purpose of the Fair Employment and Housing Act is "to protect and safeguard the right and opportunity of all persons to . . . hold employment without discrimination . . . ." (§ 12920.) If the Department of Fair Employment and Housing determines it is necessary to bring an accusation against an employer, "[t]he case in support of the accusation shall be presented before the commission by the attorneys or agents of the department." (§ 12969.) Clearly, administrative enforcement of the act was intended to function without the claimant having to hire a lawyer to pursue the claim.

practices relating to promotions, training opportunities and work assignments for Hispanic officers and for Valdez in particular. Their involvement in the police department's practices was likely to have been revealed in the course of investigating Valdez's administrative complaint and they could have anticipated that Valdez would name them in his suit. (Cf. *Chung, supra*, 667 F.2d at p. 792.) Unlike the board president in *White*, neither Gates, Spencer, or Taylor filed a declaration in this case setting out facts to show they were not involved in the challenged personnel practices or showing how they were prejudiced by Valdez's failure to name them in his administrative complaint. Of course, nothing prevents these police officials from filing such declarations in a subsequent motion for summary judgment.

This court should decline to adopt a flat rule a party not named in an administrative complaint cannot be named in subsequent litigation. Such a rule is inconsistent with the rule of liberal construction of complaints applied in title VII cases (see, e.g., *Sanchez* v. *Standard Brands, Inc.* (5th Cir. 1970) 431 F.2d 455) and adopted by California courts in cases arising under the Fair Employment and Housing Act. (See, e.g., *Watson* v. *Department of Rehabilitation, supra*, 212 Cal.App.3d at p. 1288 and cases cited therein.) Furthermore, such a strict rule will only harm victims of discrimination without providing unnamed parties any legitimate protection beyond that provided under the more flexible rules followed in cases such as *Chung, supra*.