Filed 4/17/24

# CERTIFIED FOR PUBLICATION

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# SECOND APPELLATE DISTRICT

# DIVISION EIGHT

|  |  |
|---|---|
| ARNO PATRICK KUIGOUA, | B323735 |
| Plaintiff and Appellant, | Los Angeles County |
| | Super. Ct. No. 20STCV09073 |
| v. | |
| DEPARTMENT OF VETERAN AFFAIRS, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Stephen T. Morgan, Judge.  Affirmed.

The Guha Law Firm and Ranojoy Guha for Plaintiff and Appellant.

Tiffany L. King, Deputy Secretary and Chief Counsel, Andia Farzaneh, Staff Counsel, and Samantha Lewis-Carden, Senior Staff Counsel for Defendant and Respondent.

_____

Arno Kuigoua complained about employment oppression to an anti-discrimination agency and to a court. The trouble was he told two divergent stories: one to the agency, but a different one in court. By withholding from the agency the facts he would later allege in his judicial complaint, Kuigoua scotched the agency's ability to learn about, and to conciliate, the dispute Kuigoua sought to litigate in the judicial forum. The court rightly granted summary judgment against Kuigoua for failing to exhaust his administrative remedies. Unspecified citations are to the Government Code.

I

In May 2015, Kuigoua started working for the California Department of Veterans Affairs, which we call the Veterans Department, or simply the Department.

A

Kuigoua worked for the Veterans Department as a registered nurse at the Knight Veterans Home. The Knight Home, as we will refer to it, is in Lancaster, California.

Kuigoua's employment with the Department ended in October 2018. The Department fired him after determining he sexually harassed women and delivered substandard care that injured patients.

Kuigoua appealed his termination to the State Personnel Board, which, after a six-day hearing, rejected his appeal. The administrative law judge ruled Kuigoua's dismissal was just and proper. Unsuccessful in altering this ruling were Kuigoua's petition for rehearing, his petition for writ of mandate, his appeal of the writ denial, and his 2022 petition for review by the California Supreme Court.

In short, from 2018 to 2022, Kuigoua attacked the Department's 2018 decision to fire him, but his attacks failed.

B

Just before his State Personnel Board hearing, on April 2, 2019, Kuigoua filed an administrative charge of employment discrimination. He filed this charge concurrently with the California Department of Fair Employment and Housing and the federal Equal Employment Opportunity Commission. (See *Clark v. Superior Court* (2021) 62 Cal.App.5th 289, 308, fn. 21 (*Clark*) [work sharing agreements between the Equal Employment Opportunity Commission and the Department of Fair Employment and Housing mean complaints filed with one agency are filed with the other as well].)

We describe Kuigoua's charge, which is central to this appeal.

Kuigoua filled out an official one-page form that allowed claimants to present their charge either to the Equal Employment Opportunity Commission, or to the "FEPA" (local Fair Employment Practices Agency), or both. Kuigoua checked the box for the Equal Employment Opportunity Commission. The Commission investigated this charge. We refer to Kuigoua's completed form as the Commission Form.

One section of the Commission Form required complainants to identify the nature of their complaints. It was titled "DISCRIMINATION BASED ON," and it directed complainants to "Check appropriate box(es)." Kuigoua checked the boxes for "SEX" and "RETALIATION." He checked no other box. In particular, Kuigoua did not check boxes for discrimination on the basis of race, color, religion, national origin, age, disability, genetic information, or "other (specify)."

3

In the section titled "DATE(S) DISCRIMINATION TOOK PLACE," Kuigoua wrote the earliest date was June 12, 2018 and the latest date was October 1, 2018.

Below these areas on the form is a section titled "THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):."

In this area, Kuigoua wrote the following, without an attachment. We add italics for emphasis.

"I. On or about 11 May 2015, I began my employment with the California Department of Veteran Affairs as a Registered Nurse, and my last position with the company was Registered Nurse. On or about 12 June 2018, and again on 15 July 2018 I filed an internal complaint. Beginning on or about 12 June 2018 and continuing to 01 October 2018, I was subjected to different terms and conditions of employment by Manager *Julian Manalo*, including but not limited to; being *denied any available overtime*. From in or around 20 August 2018 to on or about 01 October 2018, I was issued written discipline. Other similarly situated co-workers, not of my protected class, were not disciplined for same or similar reasons. I informed Respondent of the disparate treatment; however, no action was taken to investigate or to promptly correct. On 01 October 2018, I was discharged.

"II. I was informed by Respondent that the reason for my discharge was due to me sexually harassing two other employees and failing to show a concern for patient care.

"III. I believe *I was discriminated against because of my sex (Male)*, and I was *retaliated against for engaging in a protected activity*, in violation of Title VII of the Civil Rights Act of 1964, as amended."

Kuigoua signed the form on April 2, 2019.

4

To summarize, Kuigoua's Commission Form reported that, during three and a half months in 2018, someone discriminated against Kuigoua on the basis of Kuigoua's male gender. Kuigoua also suffered retaliation, apparently for reporting this discrimination. The retaliation took the form of denying Kuigoua the opportunity to earn overtime pay. The Department failed to ameliorate these problems and finally discharged Kuigoua altogether. Kuigoua's direct antagonist was Julian Manalo.

An equal opportunity officer named Robert Hennig investigated these charges.

Hennig reported that Manalo was a supervising administrator at the Veterans Home *in West Los Angeles*.

The West Los Angeles veterans facility is some 60 miles south of the Knight Home for veterans in Lancaster.

Hennig found no evidence Kuigoua had suffered discrimination because of his male gender. Neither had Kuigoua been subjected to retaliation for engaging in protected activity.

The Department of Fair Employment and Housing, having received notice of the complaint from the Commission, gave Kuigoua a right-to-sue notice.

C

On March 5, 2020, Kuigoua sued the Veterans Department in state court on state statutory claims. His second amended complaint is the operative complaint.

This complaint asserted four causes of action. The first is "Unlawful Gender, Sex, and/or Sexual Orientation Discrimination and Harassment (Cal. Gov. Code § 12900, *et seq*.)." The second is "Unlawful Race, Color, and/or National Origin Discrimination and/or Harassment (Cal. Gov. Code § 12900, *et seq*.)." Third is "Failure to Prevent Unlawful

5

Discrimination and/or Harassment Based on Gender, Sex, Sexual Orientation, Race, Color, and/or National Origin (Cal. Gov. Code § 12900, *et seq*.)." The fourth claim is "Retaliation Based on Gender, Sex, Sexual Orientation, Race, Color, and/or National Origin (Cal. Gov. Code § 12900, *et seq*.)."

Kuigoua's factual allegations in this complaint cover about eight pages. We first summarize, and then describe in more detail, these allegations.

Kuigoua's operative complaint asserts four theories.

1. He suffered sexual harassment.
2. He suffered harassment based on his race or on his immigrant status.
3. His employer failed to prevent this sexual and racial harassment.
4. The harassers retaliated against him after he lodged internal complaints against them.

Kuigoua's factual allegations supported his claims.

Kuigoua alleged that, during the roughly three and a half years that he worked at the Knight Home, two people in the maintenance department oppressed him. These people were Mac Smith and Marcelo Quintua.

Mac Smith was working at the Knight Home when Kuigoua arrived. Smith began taunting and threatening Kuigoua on a regular basis soon after Kuigoua started in 2015. Smith called Kuigoua "lazy," "monkey," and "Uncle Tom," said he should "go back to Africa," and accused him and other immigrants of not being "real Americans" and coming to the United States only to "steal jobs." Smith told Kuigoua he would "fuck [him] up" and threatened to report him for unknown reasons. Smith retired in November 2017.

Marcelo Quintua was the Chief of Plant Operations at the Knight Home throughout Kuigoua's employment. A few months after Kuigoua was hired, Quintua began making gestures that initially confused Kuigoua, but that he came to understand were veiled romantic overtures. Kuigoua asked Quintua to stop this behavior and told Quintua he was not gay, but Quintua persisted.

In March 2018, Kuigoua met with investigators from the Equal Employment Opportunity Commission who were looking into allegations by female employees against Smith. Kuigoua told the investigators about his own problems with Smith. No one followed up with him about this revelation.

In April or May 2018, Kuigoua responded to a resident's maintenance request. He encountered Quintua, who yelled and cursed at Kuigoua, threatened to have him fired, and followed after Kingoua to prolong the verbal assault.

Kuigoua had three meetings with Elvie Ancheta, the administrator in charge at the Knight Home during the latter part of Kuigoua's tenure. Kuigoua met with Ancheta and other administrators at the Knight Home concerning his struggles with Smith and Quintua. At each meeting, Ancheta said she would do something, either by investigating further and speaking with Quintua or by holding a group meeting to mediate the problem. These solutions never materialized.

On April 26 or June 4, 2018, Kuigoua gave Ancheta a written summary of his allegations concerning Quintua and told her that he wanted to file a formal internal complaint. According to Kuigoua, Ancheta did not follow up with him or initiate any internal procedure, to his knowledge.

Both Smith and Quintua continued to make Kuigoua's life difficult for the rest of his employment at the Home. Quintua

called Kuigoua rude names and kept propositioning him. Smith threatened Kuigoua, saying "snitches get stitches." Kuigoua told Ancheta about Smith's continuing threats, but Ancheta said she did not want to be involved in any investigation of Smith.

Kuigoua's judicial complaint stated nothing about gender discrimination against males at the West Los Angeles facility. Now the site of the oppression was 60 miles north, in Lancaster. Neither was there mention of antagonist Manalo. The retaliation now was for complaining to Ancheta about harassment from Smith and Quintua: three people Kuigoua omitted from his Commission Form. The time frame was different: over the three-year interval from 2015 to 2018, rather than the three and a half months in 2018.

D

Defendant Veterans Department responded to Kuigoua's lawsuit. The Department noted the lawsuit was about alleged events different from those Kuigoua alleged in his Commission Form. This shift, the Department protested, had cheated anti-discrimination agencies of notice and an opportunity to investigate the dispute that Kuigoua brought to the trial court. The Department moved for summary judgment on the basis Kuigoua had not exhausted his administrative remedies.

The trial court granted the Department's motion. The court's single-spaced eight-page statement of decision carefully applied the law to the disparity between Kuigoua's factual allegations in his administrative and judicial complaints. The court concluded Kuigoua's two accounts were unrelated, and an investigation of the former claims would not have uncovered the situation Kuigoua alleged in his judicial complaint. The trial

8

court entered judgment for the Department and against Kuigoua. Kuigoua appealed this judgment.

## II

Kuigoua loses this appeal because he changed horses in the middle of the stream. His agency complaint was one animal. On the far bank, however, his lawsuit emerged from the stream a different creature. Changing the facts denied the agency the opportunity to investigate the supposed wrongs Kuigoua made the focus of his judicial suit. The court rightly ruled Kuigoua failed to exhaust his administrative remedies.

## A

The purpose of the 1992 and 1993 amendments to the summary judgment statute was to liberalize the granting of summary judgment motions. This remedy is no longer called disfavored. Summary judgment is now recognized as a particularly suitable means to test the sufficiency of the plaintiff's or defendant's case. Appellate courts take the facts from the record that was before the trial court. We independently review the trial court's decision, considering all the evidence in the moving and opposing papers except that to which objections were made and sustained. (*Garcia v. D/AQ Corp.* (2020) 57 Cal.App.5th 902, 907.) We independently review whether Kuigoua exhausted his administrative remedies. (*Guzman v. NBA Automotive, Inc.* (2021) 68 Cal.App.5th 1109, 1115-1116 (*Guzman*).)

Employees like Kuigoua who wish to sue under the Fair Employment and Housing Act must exhaust the administrative remedy that statute provides. They do so by filing a complaint with the Department of Fair Employment and Housing. Filing this administrative complaint is a mandatory prerequisite to

9

suing in court. (*Guzman, supra*, 68 Cal.App.5th at p. 1117; see *Clark, supra,* 162 Cal.App.5th at p. 308, fn. 21.)

The statute establishes procedures by which aggrieved employees are to file this notice. Section 12960, subdivision (c), provides: "Any person claiming to be aggrieved by an alleged unlawful practice may file with [Department of Fair Employment and Housing] a verified complaint, in writing, that shall state the name and address of the person, employer, labor organization, or employment agency alleged to have committed the unlawful practice complained of, and that shall set forth the particulars thereof and contain other information as may be required by the department."

Once the agency receives this complaint, it investigates the alleged unlawful practice and decides whether it can resolve the matter by conference, conciliation, and persuasion. If these measures fail, the agency may issue an accusation. If the agency decides against issuing an accusation, it issues a right-to-sue letter to the aggrieved person. (*Guzman, supra*, 68 Cal.App.5th at p. 1117.)

"Exhausting administrative remedies" refers to this process of notifying the agency of employment problems and giving it the option of using conciliation as a tool. This allows the agency a chance to investigate and solve the problem short of court.

Legislators favored conciliation as the method for resolving disputes and eliminating unlawful employment practices. Successful agency conciliation eases the burdens on courts. It likewise maximizes the use of agency expertise and capability to order and monitor corrective measures. Conciliation provides a more economical and less formal means of resolving disputes. Even in cases appropriate for judicial resolution, the exhaustion

requirement can lead to settlement, can eliminate unlawful practices, and can mitigate damages. (*Rojo v. Kliger* (1990) 52 Cal.3d 65, 83 & 84, fn. 11.)

The crucial exhaustion test is this: employees satisfy the administrative exhaustion requirement if their court claims are like, and reasonably related to, the claims they stated in their administrative filing. (*Guzman, supra*, 68 Cal.App.5th at p. 1117.) If an investigation of what was charged in the administrative complaint would *necessarily* uncover other incidents that were not charged, plaintiffs can include the latter incidents in their court action. (*Okoli v. Lockheed Technical Operations Co.* (1995) 36 Cal.App.4th 1607, 1615 (*Okoli*).)

If a plaintiff's administrative complaint flunks this test, it frustrates the statute's goals. Agencies cannot unearth and conciliate problems if plaintiffs do not tell the agency what the real problems are.

B

Kuigoua loses because his judicial claims are not like, and are not reasonably related to, those in his administrative complaint. Nor would an agency investigation based on Kuigoua's administrative complaint necessarily have uncovered the abuses he described in his operative complaint.

We explain each point.

Kuigoua's claims in court were not like his claims in the administrative complaint. The administrative complaint focused on discrimination against men as well as retaliation for Kuigoua's internal complaints. The reasonable interpretation is these internal complaints were about discrimination against men, for Kuigoua identified no other specific basis for a complaint. Kuigoua's identified antagonist was Julian Manalo.

11

The stated interval was three and a half months in 2018. The scene was the veterans facility in West Los Angeles, which was where Manalo was in charge. Nothing in the record connects Manalo with Lancaster.

Kuigoua's operative complaint was unrelated to the claims Kuigoua put in his Commission Form. Julian Manalo disappeared, to be replaced by Mac Smith and Marcelo Quintua. The old claim about sex discrimination against men disappeared, to be replaced by claims of racial and national origin discrimination by Smith and sexual harassment by Quintua. The time frame changed from three and one half months in 2018 to three years, reaching back before Smith's November 2017 retirement. The venue moved 60 miles north.

These claims in court thus were not like, or reasonably related to, the claims in the Commission Form. Kuigoua "concedes that he did not mention anything about race or national origin discrimination in his administrative complaint, nor did he check the boxes for 'race' or 'national origin.'" With candor, Kuigoua admits this omission "certainly does not help" his case.

Turning now to the second part of the exhaustion test, an administrative investigation would not have uncovered the conduct that was the focus of Kuigoua's operative complaint. Investigators working off the Commission Form would have started with Kuigoua's identified antagonist: Julian Manalo. The Department would not have reasonably discovered Kuigoua's alleged issues with Smith and Quintua while investigating the facts on the Commission Form. The one person Kuigoua mentioned on the form -- Manalo -- was not present at the Knight Home, which was the only place Smith and Quintua worked. The

investigation thus would have begun in West Los Angeles, where Manalo did work, and would have ended there, for no particular in the Commission Form would have clued in the investigator to the alleged events in Lancaster:  Quintua's alleged sexual harassment or Smith's alleged racial epithets.

In fact, this is how the investigation *did* work:  it never uncovered anything about Quintua or Smith.  Investigator Hennig took note of Manalo's supervision of the West Los Angeles facility.  Hennig ran down Kuigoua's leads in the Commission Form.  Hennig found nothing amiss.

An investigation that *actually* found no uncharged incidents would not "*necessarily* uncover other incidents that were not charged."  (*Okoli, supra*, 36 Cal.App.4th at p. 1615, italics added.)

Kuigoua's opening brief concentrated on the decision in *Valdez v. City of Los Angeles* (1991) 231 Cal.App.3d 1043, 1061, which held "that failure to name Gates, Spencer and Taylor in the administrative complaint is fatal to the right to bring an action against them in the trial court."  If anything, the case's language is more helpful to the Department than to Kuigoua. (See *ibid.* ["For a claimant to withhold naming of known or reasonably obtainable defendants at the administrative complaint level is neither fair under the Act in its purpose of advancing speedy resolutions of claims nor fair to known, but unnamed individuals, who at a later date are called upon to 'personally' account in a civil lawsuit without having been afforded a right to participate at the administrative level."].)

## DISPOSITION

We deny Kuigoua's request for judicial notice as irrelevant, affirm the judgment, and order each side to bear their own costs

13

on appeal.  (*Pollock v. Tri-Modal Distribution Services, Inc.*
(2021) 11 Cal.5th 918, 947-951.)


                                                    WILEY, J.

We concur:


          GRIMES, Acting P. J.



          VIRAMONTES, J.